657 So.2d 152 (1995)
STATE of Louisiana, Appellee,
v.
Billy CAMPBELL and Wilson Campbell, Defendants-Appellants.
No. 94-1268.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
Allen Bruce Rozas, Mamou, for State of Louisiana.
Christopher Brent Coreil, Ville Platte, for Wilson Campbell and Billy Campbell.
John Larry Vidrine, Ville Platte, for Billy Campbell.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
DOUCET, Chief Judge.
By a Bill of Indictment filed February 16, 1994, Billy Campbell was charged with one count and Wilson Campbell with two counts of jury tampering, violations of La.R.S. 14:129. The case was tried to a jury over two days, July 25 and 26, 1994. The jury found both defendants guilty of attempted jury tampering. This appeal followed the denial by the trial court of motions for a new trial and for arrest of judgment filed by both defendants.

FACTS
This case arose from another proceeding, State v. Terry Campbell, CR94-1140, a second-degree murder prosecution. Defendant Billy Campbell is Terry Campbell's brother; defendant Wilson Campbell is their uncle.
On December 6, 1993, the murder trial of Terry Campbell began. Before jury selection was completed, the trial was suspended due to the death of the mother of one of the defense attorneys. On January 10, 1994, jury selection resumed. After court proceedings on January 11, the defendants went to Campbell's Landing, a community of camps supervised by their employee, Ray Ortego. Apparently, they looked for him at his bait shop first, then Billy Campbell checked nearby at Ortego's daughter's house and found him there. Wilson Campbell then asked Ortego to call Roy Chamberlain, one of the jurors, to ask for help with the jury. Ortego called and left a message at Chamberlain's house; when Chamberlain returned the call, Ortego relayed Campbell's request. Chamberlain hung up, called his attorney, and then called the presiding judge.
The trial judge conducted a hearing the next morning, and, after testimony from *153 Chamberlain and Ortego, declared a mistrial. Terry Campbell was subsequently re-tried, found guilty, and sentenced to mandatory life.
After the mistrial was declared, it was learned that Wilson Campbell had called Butch Marcantel, a cousin of another juror, Shane Marcantel. Like Chamberlain, Marcantel declined to help the Campbells, and contacted the district attorney about the call.
A grand jury indicted both men for jury tampering, a violation of La.R.S. 14:129. After a two-day trial, the jury found the defendants guilty on all counts of attempted jury tampering. The trial judge sentenced each man to two (2) years with the Department of Corrections, plus costs and fines. Both defendants now appeal raising nine assignments of error. As we find sufficient error in assignment of error number eight to mandate reversal of both convictions, we will not address any other issues.

LAW AND DISCUSSION
By this assignment, both defendants allege the trial court erred in denying their motions for arrest of judgment. More to the point, they argue the crime for which they were convicted, "attempted jury tampering," does not exist. Both defendants rely upon State v. Eames, 365 So.2d 1361, 1363 (La.1978), which states:
If the definition of another crime includes attempt to do something, the attempt statute, R.S. 14:27, cannot be employed for then a defendant would be charged with an attempt to attempt to do an illegal act.
La.Code Crim.P. art. 859(5) sets forth the grounds for an arrest of judgment:
The court shall arrest the judgment only on one or more of the following grounds:
The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment.
Thus, the defendants argue the verdict was not responsive to the indictment, as the crime of "attempted jury tampering" does not exist.
We note the defendants failed to object to the jury charge when it was given. La.Code Crim.P. art. 801 states at paragraph 2:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
La.Code Crim.P. art. 841(A) states:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The caselaw consistently supports these requirements. See, e.g., State v. Dobson, 578 So.2d 533 (La.App. 4 Cir.), writ denied, 588 So.2d 1110 (La.1991), overruled, 625 So.2d 217 (La.App. 4 Cir.), reinstated, 625 So.2d 220 (La.App. 4 Cir.1993). As the state observes in its brief, articles 801 and 841 were written to prevent defendants from "gambling" on the jury's verdict, then raising error if the verdict is adverse.
However, the foregoing does not save the state's case against the defendants. Failure to make a contemporaneous objection to a nonresponsive verdict does not preclude objection in a motion for arrest of judgment. State v. Foret, 479 So.2d 526 (La.App. 1 Cir.1985).
A search for caselaw dealing with jury tampering has unearthed no information on this statute. However, as the defense points out, an "attempt to attempt" a crime is not a punishable offense under Eames:
An attempt is an inchoate offense. The crime of attempt is designed to punish certain activity which was not completed incipient criminal activity. It depends for its existence on a "specific intent to commit a crime." R.S. 14:27. If the definition of another crime includes the attempt to do *154 something, the attempt statute, R.S. 14:27, cannot be employed, for then a defendant would be charged with an attempt to attempt to do an illegal act. The reporter's comment to R.S. 14:27 makes this clear:
`This section is in accord with the general common law concept of attempt. An attempt to commit any crime is an offense, whether the offense attempted be a felony or merely a misdemeanor. Clark and Marshall, Law of Crimes (4th ed. 1940) 153, s 113. Since there can be no such thing as an attempt to commit an attempt, there can be no attempt to commit either an aggravated assault or a simple assault. Those offenses are themselves in the nature of attempts to commit a battery. See Clark and Marshall, supra, 156, s 114(d).'
See also 28 La.L.Rev. 543, 544 (1968), footnote 115:
"There is no such thing as attempted conspiracy. The courts refuse to apply the principle of the inchoate crime of attempt to other inchoate crimes. Note, 9 La.L.Rev. 413 (1949)."
9 La.L.Rev. 413 was a case note on State ex rel. Clarence Duhon v. General Manager, Louisiana State Penitentiary, No. 39,091, July 20, 1948, in which this court approved without discussion the release on a writ of habeas corpus of one who had been convicted of attempted conspiracy without having filed a motion in arrest of judgment or having taken an appeal.
Since the bill could charge only one offense, and particularized the offense of inciting to riot, and since inciting to riot, as defined in the statute, is an inchoate offense, the verdict returned was not responsive, as there can be no attempt to incite, and inciting to riot was the only crime charged.

State v. Eames, 365 So.2d at 1363-64.[1]
See also State v. Dyer, 388 So.2d 374, 376 (La.1980), in which the state's high court held that "attempted concealment of a firearm" was not an offense punishable under a valid statute. The court reasoned the elements of attempt would be identical to the elements for the completed offense.
This court dealt with Eames in State v. Walker, 534 So.2d 81, 83 (La.App. 3 Cir. 1988), where the defendant had been convicted of attempted incest. After quoting Eames, this court observed:
An inchoate crime is `an incipient crime which generally leads to another crime.' Black's Law Dictionary 686 (5th Ed.1979). Since the incest statute prohibits not only marriage between persons related within a certain degree, but also sexual intercourse between these persons, it is clear that the crime of incest is not an inchoate offense. Accordingly, the concept of attempt is applicable to the crime of incest. Therefore, we find no error in the trial court's conclusion that defendant was guilty of attempted incest.
However, Walker is of little help in the case sub judice. The plain wording of the jury tampering statute, La.R.S. 14:129, shows attempted communication with a juror is clearly contemplated as conduct punishable under the statute. The relevant portion of La.R.S. 14:129 states:
Jury tampering is any verbal or written communication or attempted communication, whether direct or indirect, made to any juror ... [emphasis ours].
It is clear that this statute was meant by the legislature to "cast a wide net" of punishable conduct, including attempts. As the Louisiana Supreme Court said in its discussion of the pre-1968 version of La.R.S. 14:129:
The statute is susceptible of an extended application which defies legal measurement. It was designed to supplement the provisions of the law prohibiting Public Bribery and Public Intimidation of petit jurors. Actually it supplants those provisions: it is sufficiently broad to embrace all of the criminal conduct toward petit jurors proscribed by them. A newspaper article, a bribe, a gesture, a smile, a lifting of the eyebrowsall can be caught in its broad net. [footnotes omitted].

*155 State v. Robertson, 241 La. 249, 128 So.2d 646, 649 (1961).
While the basis of Eames and Dyer are somewhat different, they are related, and the reasoning behind either would lead to the same result in the case before the court.
A conviction of "attempted jury tampering" would have to rest on the following elements:
general intent
an attempt to communicate (directly or indirectly) with a juror
for the purpose of influencing the juror (in a case pending or imminent)
for a corrupt and fraudulent purpose, or by violence or force, by threats whether direct or indirect
These same elements support a conviction for the completed offense, and that this is exactly what the legislature desired in enacting the statute. Any attempt at jury tampering is subsumed into the statute.
We note that State v. Mayeux, 498 So.2d 701 (La.1986), after remand, 526 So.2d 1243 (La.App. 3 Cir.), writ denied, 531 So.2d 262 (La.1988) would appear to allow us to remand the case for a new trial. In that case, the defendant, Mayeux, had been convicted of "attempted battery"; on appeal, this court reversed and ordered acquittal and discharge of the defendant. Mayeux, 485 So.2d 256 (La.App. 3 Cir.1986). The Louisiana Supreme Court reversed and remanded for retrial, stating double jeopardy does not preclude the state from retrying a defendant whose conviction is set aside due to judicial error.
The defendant was retried on two counts of aggravated battery, and was found not guilty as to the first count; guilty as charged on the second. On the appeal after remand, this court treated the higher court's decision as dispositive on the double jeopardy issue. Mayeux, 526 So.2d at 1244-1245.
However, the federal district court granted Mayeux's application for habeas corpus. In finding that defendant's second prosecution was barred by double jeopardy, the court stated:
Mayeux alleges that his conviction on one count of aggravated battery at his second trial resulted from a violation of his Fifth Amendment protection against double jeopardy, and alternatively claims that his conviction at his second trial is invalid because collateral estoppel prohibited relitigation of the issue, decided at the first trial, of whether Mayeux was guilty of aggravated battery.
Mayeux cites the case of Adams v. Murphy, 653 F.2d 224 (5th Cir.1981) as being almost identical to the case at bar in its facts and principles of law. In Adams, the habeas corpus petitioner had been tried in a Florida State Court for testifying falsely to a Florida Grand Jury. At the close of evidence in the state trial, the defense requested a charge on `attempted perjury' as a lesser included offense, and the trial court charged the jury both on perjury and `attempted perjury', even though there was no such offense as attempted perjury under Florida law. The jury returned a verdict of `guilty of the lesser included offense of attempted perjury.'
Adams unsuccessfully challenged his conviction in Florida state courts and then sought habeas relief in the United States District Court, which concluded that no such offense as attempted perjury existed under Florida law and granted the writ on due process grounds. The state appealed to the U.S. Fifth Circuit, and the Fifth Circuit affirmed, stating that `Nowhere in this country can any man be condemned for a non-existent crime.'
Then, in dicta, the Fifth Circuit stated the following: `It may be that the jury semi-pardoned Adams, by convicting him of the non-existent, lesser included offense. Even if this be so, there can be no doubt that it acquitted him of perjury; he can therefore never be tried again for that offense.' 653 F.2d at 225.
Even though the above quoted statement is dicta in the Adams case, it appears, nevertheless, to be correct.
The U.S. Supreme Court long ago established that the Fifth Amendment prohibition of double jeopardy barred the retrial of a defendant for a crime of which he was *156 previously acquitted. [...] [citations omitted] In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the U.S. Supreme Court determined that the double jeopardy provision of the Fifth Amendment should be applied to the states through the Fourteenth Amendment.
In the case at bar, the State argues that because the jury verdict in Mayeux's first trial purported to convict Mayeux of a crime that did not exist, the jury's verdict was null and could not constitute an acquittal of the crime of aggravated battery.

[ . . . ]
Even though the jury at Mayeux's first trial returned an improper verdict, that jury had been `given a full opportunity to return a verdict' on the charge of aggravated battery, and instead reached a verdict on what the judge had instructed was a lesser charge. The judge had clearly told the jury that if they were not convinced that Mayeux was guilty of aggravated battery, but were convinced beyond a reasonable doubt that he was guilty of attempted aggravated battery, the form of their verdict should be, `We, the jury, find the defendant guilty of Attempted Aggravated Battery.' When the jury brought back precisely that verdict, it clearly showed that the jury had acquitted Mayeux of aggravated battery. Therefore, Mayeux's second trial unconstitutionally put him in jeopardy a second time on the charges of aggravated battery.
Mayeux v. Belt, 737 F.Supp. 957, 959-961 (W.D.La.1990).
While we would prefer to follow the ruling of the Louisiana Supreme Court in State v. Mayeux, supra, we refuse to waste the limited judicial resources of this state in vain and futile acts.
Thus, we have no choice but to find that this assignment has merit and accordingly we are required to reverse the defendants' convictions and sentences and discharge the defendants. See also La.Code Crim.P. art. 598.
CONVICTIONS AND SENTENCES REVERSED; ACQUITTAL ORDERED; DEFENDANTS DISCHARGED.
NOTES
[1] As the riot resulted in death, Eames was a felony case. La.R.S. 14:329.7C.