670 So.2d 1212 (1996)
STATE of Louisiana
v.
Billy CAMPBELL and Wilson Campbell.
No. 95-K-1409.
Supreme Court of Louisiana.
March 22, 1996.
Richard P. Ieyoub, Attorney General, J. William Pucheu, District Attorney, Allen B. Rozas, Mamou, for Applicant.
Christopher B. Coreil, John L. Vidrine, Ville Platte, for Respondents.
PER CURIAM:
We granted certiorari to consider whether a jury's return of a non-responsive verdict of attempt, an error invited by the trial court's incorrect listing of responsive verdicts, operates as an implicit acquittal of the charged offense when the elements of the attempted offense and the charged substantive crime are identical.
The charges in this case arose from another proceeding in which the state tried Terry Campbell, Billy Campbell's brother and Wilson Campbell's nephew, for second degree murder. The state presented evidence at trial that relators approached Ray Ortego, *1213 who supervised a community of camps for them, and enlisted his aid with Terry Campbell's case. Ortego called Roy Chamberlain, one of the jurors, to ask for help with the jury. Chamberlain hung up, called his attorney, and then called the presiding judge. That call precipitated a mistrial in Terry Campbell's case on the following morning. Terry Campbell was subsequently re-tried, found guilty, and sentenced to life imprisonment at hard labor. After the mistrial, the state learned that Wilson Campbell had called Butch Marcantel, a cousin of another juror in the Terry Campbell case. Like Chamberlain, Marcantel declined to help the Campbells, and contacted the district attorney about the call.
The state charged Billy and Wilson Campbell together in one count of jury tampering in violation of La.R.S. 14:129. That count stemmed from Ray Ortego's call to Roy Chamberlain. The state also charged Wilson Campbell separately in the same bill of information with one count of jury tampering for the call to Butch Marcantel. After the jury returned verdicts of attempted jury tampering on all counts the trial court sentenced relators to two years at hard labor. On appeal, the Third Circuit held that the verdicts returned by the jury were not responsive to the charged offense and vacated relators' convictions and sentences. State v. Campbell, 94-1268 (La.App. 3rd Cir. 5/3/95), 657 So.2d 152. The court of appeal further held that the jury's verdicts had nevertheless acquitted relators of the charged offense and that double jeopardy principles thus precluded their retrial for jury tampering on double jeopardy grounds. The court ordered relators discharged from further prosecution in this case. Id., 94-1268 at 8-9, 657 So.2d at 155-56. We granted the state's application for review and now affirm in part and reverse in part.
La.R.S. 14:129 provides in pertinent part that "[j]ury tampering is any verbal or written communication or attempted communication, whether direct or indirect, made to any juror in a civil or criminal cause ... for the purpose of influencing the juror in respect to his verdict...." It further provides that "the influencing or attempt to influence the juror must be ... for a corrupt or fraudulent purpose...." The statute's present language reflects the legislature's response to our decision in State v. Robertson, 241 La. 249, 128 So.2d 646 (1961), which held that the original version of La.R.S. 14:129, proscribing "any influencing of, or attempt to influence, any petit juror in respect to his verdict" was unconstitutionally vague.
Because the offense of jury tampering encompasses the attempt to influence jurors for corrupt purposes, by means of direct or indirect communications or attempted communications, attempted jury tampering is not a lesser and included responsive offense for purposes of La.R.S. 14:27 or La. C.Cr.P. art. 815. See State v. Dyer, 388 So.2d 374, 376 (La.1980) (if "the nature of the offense is such that proof of the attempted offense proves the substantive offense," attempt is not responsive to the charged offense); State v. Eames, 365 So.2d 1361 (La. 1978) (same). Relators acquiesced in the list of responsive verdicts given jurors by the trial judge but the return of the unresponsive verdicts of attempted jury tampering constitutes an error patent on the face of the record and requires reversal of relators' convictions. State v. Mayeux, 498 So.2d 701 (La.1986); State v. Thibodeaux, 380 So.2d 59 (La.1980); State v. Cook, 372 So.2d 1202 (La. 1979).
La.C.Cr.P. art. 598(A) provides that "[w]hen a person is found guilty of a lesser degree of the offense charged, the verdict or judgment of the court is an acquittal of all greater offenses charged in the indictment and the defendant cannot thereafter be tried for those offenses on a new trial." The statute incorporates a fundamental principle of double jeopardy law. Price v. Georgia, 398 U.S. 323, 328-30, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970) ("[t]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.") (parsing Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). In State v. Mayeux, this Court nevertheless held that *1214 the jury's return of an illegal verdict for attempted aggravated battery, purportedly a lesser and included offense listed by the court as a responsive verdict but a non-crime under Louisiana law, "operate[d] neither as a conviction nor acquittal" for double jeopardy purposes. We therefore concluded that vacation of the illegal verdict in Mayeux did not bar retrial of the charged offense of aggravated battery. Id., 498 So.2d at 705. The Third Circuit would have preferred to have followed that rule in this case but felt constrained to reach a different result because of the ultimate outcome in Mayeux. After his retrial and conviction for aggravated battery and his exhaustion of state avenues of direct review, see State v. Mayeux, 531 So.2d 262 (La.1988), Mayeux petitioned for federal habeas corpus relief. He overturned his conviction on grounds that "[e]ven though the jury at Mayeux's first trial returned an improper verdict, that jury had been `given a full opportunity to return a verdict' on the charge of aggravated battery, and instead reached a verdict on what the judge had instructed was a lesser charge...." Mayeux v. Belt, 737 F.Supp. 957, 961 (W.D.La. 1990) (quoting Price v. Georgia, 398 U.S. at 329, 90 S.Ct. at 1761).
We need not reconsider here the continuing validity of State v. Mayeux in light of its subsequent history. When jurors convicted relators of the crime of attempted jury tampering they did not return verdicts for a non-offense. Under Louisiana law, attempted jury tampering is jury tampering, the crime charged in the bill of information. The evidence presented by the state gave jurors a rational basis for concluding that relators indirectly communicated with juror Chamberlain through their intermediary Ray Ortego for the purpose of influencing the outcome in Terry Campbell's murder trial. The evidence also provided jurors with a rational basis for concluding that relator Wilson Campbell attempted to communicate with the jurors in Terry Campbell's case by approaching Ray Marcantel for the same corrupt purpose. Given this evidence, we cannot say that the jury's return of the purportedly lesser verdicts of attempt necessarily and implicitly acquitted relators of any material element of the charged crimes, or that the verdicts necessarily represented an expression of jury lenity despite the weight of the evidence presented. The verdicts rationally conformed to the conduct charged in the bill of information and the evidence presented at trial although they were otherwise illegal and should not have been charged by the trial court.
The verdict in a criminal case must clearly convey the intent of the jury. La.C.Cr.P. art. 810. The trial court's error in charging the responsive verdicts in this case rendered the jury's verdicts insolubly ambiguous, and we cannot discount the possibility that jurors meant to exercise lenity by returning the purportedly lesser verdicts of attempt. Because of the confusion caused by the error in listing the responsive verdicts in this case, the verdicts returned by the jury did not clearly convict or acquit relators of the charged offenses. In this context, we do not believe that retrial of relators under a correct set of instructions for the charged crime of jury tampering would constitute double jeopardy. Accordingly, while we affirm that part of the Third Circuit's decision reversing relators' convictions and sentences, we vacate the court of appeal's order discharging relators from custody and remand this case to the district court for further proceedings in accord with the law.
LEMMON, J., dissents and assigns reasons.
WATSON, J., dissents for the reasons assigned by Justice LEMMON.
LEMMON, Justice, dissenting.
I dissent from the appellate court's reversing the conviction of attempted jury tampering.
The error on which the reversal was based was the listing of a non-existent crime as a responsive verdict. As the majority notes, the verdict of guilty of attempted jury tampering is not the conviction of a non-crime. Defendant's conduct is defined as a crime by the statute he was charged with violating. Attempted jury tampering is the crime of jury tampering, and every element of the *1215 charged crime was proved beyond a reasonable doubt.
Significantly, the defense did not object to the inclusion of attempt as a responsive verdict. Defendant had a strategic reason for not objecting. The responsive verdict accorded a substantial benefit to defendant by allowing for partial jury nullification and permitting the jury to return a verdict with only one-half of the maximum sentence of the crime of jury tampering.
Under these circumstances, the resolution of this case can be analogized from the decision in State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982). The Elaire decision held that when the defendant fails to object to a legislatively authorized responsive verdict in time for the judge to consider the error of including that verdict in the list of responsive verdicts, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the charged crime. The Elaire decision recognized the legitimacy of a compromise responsive verdict and the necessity of objecting timely to the listing of an improper responsive verdict, allowing the conviction of the responsive verdict to stand as long as the evidence supported a conviction of the charged crime.
The present case does not involve a legislatively authorized responsive verdict, but does involve a responsive verdict that constitutes a crime defined by the Legislature. Defendant failed to object in time for the trial judge to correct the error in listing attempt as a responsive verdict. Defendant benefitted by his failure to object since the jury returned a verdict with a lesser penalty than the charged crime. Since the evidence clearly supports the charged crime, there is no constitutional or statutory basis for reversing the conviction of the crime defined by the Legislature, as long as the maximum punishment is limited to one-half of that prescribed in La.Rev.Stat. 14:129.