STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-194


STATE OF LOUISIANA

VERSUS

DENNIS WELDON THOMPSON


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 68548
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**Don M. Burkett**
**District Attorney, Eleventh Judicial District**
**Anna L. Garcie, Assistant District Attorney**
**P. O. Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Dennis Weldon Thompson**

**PICKETT, Judge.**

## FACTS

Late in the evening on October 3, 2010, the defendant, Dennis Weldon Thompson, and co-defendant, Gregory Collier, knocked on Rufus and Neva Kelly's kitchen door. One of the men said that his car had broken down, and he required help. When Mr. Kelly opened the door, one man produced a gun. The two men then forced their way into the house and threatened to harm the couple unless they complied. The two men ransacked the house and took money, Ms. Kelly's cell phone, and Mr. Kelly's hat. After tying the couple up, they fled the scene.

On December 9, 2010, the defendant was charged by a bill of information with one count of armed robbery, a violation of La.R.S. 14:64, and one count of home invasion, a violation of La.R.S. 14:62.8. A jury trial commenced on August 28, 2012, and on August 29, 2012, the jury returned a guilty verdict of first degree robbery, a violation of La.R.S. 14:64.1, and home invasion.

The defendant was sentenced on December 13, 2012, to forty years at hard labor without the benefit of parole, probation, or suspension of sentence on the conviction for first degree robbery, and twenty-five years at hard labor without the benefit of parole, probation, or suspension of sentence on the conviction for home invasion. The sentences were ordered to be served consecutively. Defense counsel filed a Motion to Reconsider Sentence alleging that the sentences were excessive considering the circumstances of the case. The motion was denied without written reasons.

The defendant has perfected a timely appeal, alleging insufficient evidence to sustain the convictions and excessive sentences.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## SUFFICIENCY OF THE EVIDENCE

The defendant argues that there was no direct evidence connecting him with the home invasion and first degree robbery of the Kellys. He points out that neither Mr. Kelly nor Mrs. Kelly identified him as the robber prior to or during the trial. The convictions are based solely on circumstantial evidence. He further asserts that the credibility of two of the state's witnesses is questionable. Accordingly, the defendant asserts that the evidence was insufficient to sustain the convictions.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; *see State v. Neal*, 2000-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La.R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Neal,* 2000-0674 p. 9, 796 So.2d at 657.

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

The credibility of a witness is a matter of weight of the evidence, not sufficiency, and determination of the credibility is left to the finder of fact's sound

discretion and will not be re-weighed on appeal. *State v. F.B.A.*, 07-1526 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, *writ denied,* 08-1464 (La. 3/27/09), 5 So.3d 138.

At trial, the following witnesses testified:

Rufus Kelly testified that he was seventy-four years old at the time of the incident. He lived on Kelly Road, in Sabine Parish, about a mile away from BJ's Grocery on Highway 6. At approximately 11:30 p.m., there was a knock at Mr. Kelly's kitchen door. Mrs. Kelly had already retired to the bedroom. A man stood outside and, through the door, told Mr. Kelly that his car was broken down in a ditch. When Mr. Kelly opened the door the man charged up the steps, pulled a gun, and shouldered his way into the kitchen. The man jammed the gun under Mr. Kelly's chin and asked if there was anyone else in the house. He told the man only his wife, who was in the bedroom. He described the man as a dark-skinned black male, and not wearing a mask. The man then pushed him towards the bedroom. When they entered the room, Mrs. Kelly was standing beside the bed with a .22 rifle. The man "got excited and jammed the gun up harder and said, uh, put that gun down, put it down, I'll kill him, I'll kill him." Mrs. Kelly put the gun down.

Mr. Kelly testified that at this point another man came into the bedroom wearing a ski mask and gloves. The first man gave the gun to the masked man. The masked man told the first man to put his mask on, which he did at that time. The two men then marched the couple around the house looking for money. They took Mr. Kelly's wallet. The first man demanded more money, stating that "I need some ice." Additional money was taken from a bedroom drawer. They took over two hundred fifty dollars and Mrs. Kelly's cell phone. The two men tied the couple up with duct tape and fled the house. Mr. Kelly testified that after the men went outdoors, he heard "one say, hey, and that's when the driver pulls up. You can hear

the vehicle and they got in it and left." Mr. Kelly stated that he was never shown a photographic lineup or identified the men for the police. He did not identify the two men at trial as the individuals who perpetrated these offenses.

Mrs. Neva Kelly also testified. Her testimony corroborated her husband's testimony. She also stated she was never shown a photograph lineup or identified the two robbers. She said she never saw their faces.

The couple was eventually able to free themselves. Upon discovering that their house phone was inoperable, they drove to the sheriff's office to report the robbery.

David Self, a lieutenant with the Sabine Parish Sheriff's Office, investigated the case. He stated that they collected the duct tape used to tie the victims to look for DNA evidence. Lieutenant Self explained that "ice" was the street term for methamphetamine. He also testified that eleven days after the robbery, he was contacted by Chris Miller, a distant neighbor of the Kellys, who told him that he had found Mrs. Kelly's cellphone alongside the road about one-half mile from the Kellys' house. He told Mr. Miller to stay right where he was and immediately drove to the location. Lieutenant Self stated that near where the cellphone was found, he located several items that were apparently tossed toward the wooded area: a ski mask, a pillow case, a blue hoodie, and some scrap material. These items were collected to be tested for DNA evidence. He stated that shortly after these items were sent to the crime laboratory, he was contacted by Alice Maxie, who advised him that her former boyfriend, the defendant, had told her that he and another man had robbed a couple and had tied them up with duct tape. Lieutenant Self also collected DNA samples from the defendant, the co-defendant, and two other suspects.

Ms. Maxie testified at trial that the defendant told her that "him and Greg had went and robbed someone out there on the—I don't know the name of the road but across from BJ's[.]" He said that he tied up the victims with duct tape and that he had robbed them to get money for ice. The defendant said that he and Mr. Collier had thrown items of clothing out of the vehicle. She explained that although she and the defendant had been living together with her young daughter, she moved out and began living with her parents a few weeks prior to the robbery. The defendant stayed in the rental house for a while because he had no other place to stay at the time. However, shortly before she called the police, her former landlady called her and told her that the stove and refrigerator were missing from the house and she was expected to pay for the missing appliances. At trial, Ms. Maxie identified the blue hoodie as one that belonged to her, but that the defendant wore it. She also identified some of the material found with the blue hoodie and the ski mask as one pant leg from her daughter's jogging suit. Based on this information, Lieutenant Self obtained an arrest warrant for the defendant and Mr. Collier.

Albert Brown, Jr. testified that he lived in New Orleans, but in October 2010, he lived in Florien, Louisiana, and knew Mr. Collier. He said that at the time he did a lot of drugs with Mr. Collier. He did not know the defendant until he was introduced to him by Mr. Collier. He identified both men in court. He testified that one night in October 2010, he drove the two men and Mr. Collier's daughter to a location directed by Mr. Collier's daughter. Mr. Collier said that he and his daughter were homeless and he needed to pick up some money. They drove down Highway 6 and then turned off and went a short distance. He was told to stop, and the two men got out of the car. He said they told him to go get gas and come back

to pick them up. After he got gas, he went back, but "I passed them up at first and I just, you know, and I heard them holler - - somebody holler then I stopped." He said they drove for a bit and stopped again. The defendant and Mr. Collier got out of the vehicle and it "sounded like they was [sic] throwing something out or whatever, you know."

Roxanne Liles testified regarding the DNA samples collected by the police. She worked for the North Louisiana Criminalistics Laboratory and was qualified as a DNA analyst and forensic scientist. She testified that she found hair in the ski mask. She analyzed the DNA taken from the hair and a blue shirt found with the items on the roadside. She stated that Mr. Collier could not be excluded as the major contributor to the DNA located on those two items. Furthermore, Ms. Liles testified that the defendant could not be excluded as the major contributor of the DNA found on the blue hoodie.

The defendant argues that, in addition to the fact that there is no physical evidence to connect the defendant with the crimes, Ms. Maxie's and Mr. Brown's testimonies were suspect. He argues that they had both received deals in exchange for their favorable testimonies.

At trial, Mr. Brown testified that he pled guilty to accessory after the fact to home invasion and spent sixteen months in jail. An accessory after the fact is defined as "any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." La.R.S. 14:25. He agreed that because of his extensive prior criminal history, had he been charged as a principal, he would have been facing a lengthy prison sentence. Mr. Brown also admitted that he

agreed to testify for the state as a part of the plea agreement, although he insisted at trial that he did not know what the two men were up to when he dropped them off and returned to pick them up.

Ms. Maxie, however, was not charged with any crime. Ms. Maxie agreed that she did not report the defendant's revelation until after she learned that he may have taken the appliances out of the house she had leased. A person does not have a legal obligation to report a crime if she should learn about the crime after the fact but did nothing to aid the offender. In this case, there was no plea agreement. Ms. Maxie did not benefit from her testimony.

The appellate court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). The appellate court's function is not to assess credibility or re-weigh the evidence. *State v. Helou*, 02-2302 (La. 10/23/03), 857 So.2d 1024. "In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion." *State v. Dorsey*, 10-216, p. 44-45 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, 80 U.S. 3563, 132 S.Ct. 1859 (2012).

Although the victims could not identify the men who robbed them at gunpoint, the circumstantial evidence was overwhelming. A ski mask was located a short distance away from the victim's house. DNA analysis of the hair found in the mask connected the mask to Mr. Collier. The blue hoodie contained the defendant's DNA. Both items were located close to where Mrs. Kelly's cellphone was found. Mr. Kelly testified that his house was located close to BJ's store. The defendant told his former girlfriend that he had robbed a couple who lived close to

BJ's store. Mr. Kelly testified that after the two men left the house, he heard one of the men yell out, and a vehicle stopped and picked them up. Mr. Brown testified that he had passed up the two men, and when one of the men hollered, he turned around and drove back to them. The jury heard all of the testimony, and there were no internal contradictions or irreconcilable conflicts with the physical evidence. We find that the jury's decision was rational in this case. "[*I*]*rrational* decisions to convict will be overturned, *rational* decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988) (emphasis in original). *See also State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied,* 09-1955 (La. 6/25/10), 38 So.3d 352. We find the circumstantial evidence presented excluded every reasonable hypothesis of innocence.

There is no merit to this assignment of error.

## EXCESSIVE SENTENCE

The defendant was sentenced to forty years at hard labor on the conviction for first degree robbery and twenty-five years at hard labor on the conviction for home invasion. The sentences were ordered to be served consecutively for a total of sixty-five years imprisonment. The defendant argues that the sentences are excessive considering the offenses and excessive in that the sentences were ordered to be served consecutively.

The statute regarding the offense of first degree robbery provides for a range of punishment "at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence." La.R.S. 14:64.1(B). The statute regarding home invasion in

8

a case where the victim is sixty-five years or older mandates that the offender "shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less than ten nor more than twenty-five years. At least ten years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence." La.R.S. 14:62.8(B)(2).

The sentences were the maximum prison sentences that could have been ordered. The defendant asserts that the sentences are nothing more than cruel and unusual punishment. This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

This court went on to agree with the fifth circuit, who, in *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, stated that a reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

9

3. The sentence imposed for similar crimes by the same court and other courts.

In the current case, at the sentencing hearing, the trial court stated for the record:

> You appeared in this court and you were convicted by a jury of home invasion and first degree robbery. I discussed with your attorney and Ms. Garcia regarding the mistake made in the presentence investigation. It should have reflected that jury convicted you of home invasion and first degree robbery not armed robbery. I note that you are in fact a fourth felony offender. I've reviewed the PSI. I've made it available to your attorney to review. I've read your statement. I've noted the victim impact statement. As I stated earlier, I noted that you are a fourth felony offender. I've reviewed the sentencing guidelines. In this court's opinion, a lesser sentence would not address the seriousness of these offenses that you committed. And this is not the first time that you have gone into someone's home or a dwelling. You were originally back in 2000 in fact-- and of course the PSI reflects all this and I'm going to cause it to be filed in the record-- you were originally charged with aggravated burglary and armed robbery and allowed to plead guilty to aggravated burglary. And then you have some other felonies as well.

The defendant argues that the trial court did not state for the record sufficient aggravating factors to warrant maximum sentences, particularly maximum sentences that are also ordered to be served consecutively. However, the trial court is not required to list every aggravating or mitigating circumstance as long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith,* 433 So.2d 688, 698 (La.1983). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.Code Crim.P. art. 894.1. *State v. Lanclos*, 419 So.2d 475 (La.1982).

As noted above, the trial court ordered and reviewed a presentence report and filed it into the record. The report indicated that the defendant was thirty-four at the time. He had a tenth grade education. In the defendant's statement, he admitted he relied on a life of crime to support a drug and alcohol problem. The

10

report revealed that while he was not married, he had four children, whom, he claimed, he supported. Prior to the current offenses, he had been arrested five times, involving twelve offenses, starting in 1997. He pled guilty to two misdemeanors and four felonies. Several of the sentences imposed were suspended, and he was placed on probation. In each case, the probation was revoked and he was required to serve out the sentence. The defendant has never satisfactorily completed a term of probation or parole.

The trial court heard the evidence at trial that supported a conviction for armed robbery, but the jury chose to convict the defendant of first degree robbery, an offense that involves threats of death or great bodily harm to more than one person. The defendant also argues that it was error for the trial court to order the sentences to run consecutively pursuant to La.Code Crim.P. art. 883, which provides that, when two or more convictions arise from the same transaction or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. However, the jurisprudence recognizes that it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. *State v. Bartie*, 12-673 (La.App. 3 Cir. 12/5/12), 104 So.3d 735. "The factors to consider when imposing consecutive sentences include defendant's criminal record, the severity or violent nature of the offenses, or the danger the defendant poses to the public." *State v. Wallace*, 11-1258, p. 14 (La.App. 3 Cir. 5/30/12), 92 So.3d 592, 602, *writs denied*, 12-1861, 12-1865 (La. 3/8/13), 109 So.3d 355. Failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Williams*, 08-556 (La.App. 5 Cir. 1/13/09), 8 So.3d 3, *writ*

*denied*, 09-330 (La.11/6/09), 21 So.3d 298. Furthermore, while noting that particularly where the convictions arise out of the same course of conduct, in *State v. Brown*, 627 So.2d 192, 199 (La.App. 3 Cir. 1993), *writ denied*, 93-3101 (La. 3/18/94), 634 So.2d 850, this court stated that "in cases involving offenders without prior felony record, concurrent rather than consecutive sentence should be imposed[.]" This defendant has a significant felony record.

This court affirmed a thirty-year sentence imposed on a conviction for first degree robbery in *State v. Sullivan*, 02-360 (La.App. 3 Cir. 10/2/02), 827 So.2d 1260, *writs denied*, 02-2931 (La. 4/21/03) 841 So.2d 790 *and* 02-2965 (La 9/5/03), 852 So.2d 1024. The defendant, who had four prior convictions, robbed a bank while pretending he had a gun. In the current case, while the maximum sentences imposed consecutively for a total of sixty-five years is harsh, we cannot say that the trial court abused its vast discretion when it sentenced the defendant. There were two elderly victims, there was a serious threat of death or great bodily harm, and the defendant has a lengthy criminal history involving violent crimes.

## ILLEGALLY LENIENT SENTENCE

Lastly, the defendant argues that the sentences are illegally lenient and indeterminate. He notes that at the sentencing hearing, when the trial court pronounced the sentences, it stated only that the sentences were to be served without parole. The trial court did not recite the standard language, "without the benefit of parole, probation, or suspension of sentence." *See* La.R.S. 14:62.8(B)(2) and 14:64.1(B). However, La.R.S.15:301.1 provides, in pertinent part:

> A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence

without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.

. . . .

C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.

In cases in which the trial court does not recite restrictions on probation or suspension of sentence at sentencing, La.R.S. 15:301.1(A) deems that those required statutory restrictions are included in the sentence, whether the sentencing court imposes them or not. *State v. Williams,* 00-1725 (La. 11/28/01), 800 So.2d 790. Furthermore, in a case where the trial court did not specify that the sentence was not subject to probation or suspension of sentence when required by statute, the fifth circuit, in *State Fletcher*, 03-60, p. 12 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222, held that "a trial court is in substantial compliance with the sentencing directives of the multiple offender statute if the court does not affirmatively suspend any portion of the enhanced sentence or impose any probationary period, despite the failure to state the above restrictions."

The defendant also argues that the trial court did not indicate for the record how many of the years imposed on the home invasion conviction were to be served without parole. However, the trial court did state that "[r]egarding the home invasion[,] because at least one of the occupants was sixty-five years of age or older, the sentence of the court is twenty-five years at hard labor without parole."

13

The trial court quite clearly ordered that the entire sentence to be served without parole.

The defendant further argues that the trial court failed to impose a mandatory fine, and as such, the sentence is illegally lenient. The defendant argues "This error alone requires that the matter be remanded to the trial court for the imposition of the fine." The home invasion statute provides that, in a case where there is present in the dwelling a person sixty-five years or older, the offender "shall be fined not more than ten thousand dollars." La.R.S. 14:62.8(B)(2).

This court has routinely declined to recognize La.R.S. 14:62.8(B)(2) as requiring vacation of the sentence and remanding even though no fine was imposed. *See State v. Francois*, 06-788 (La.App. 3 Cir. 12/13/06), 945 So.2d 865, wherein this court did not find the defendant's sentence excessive or deficient even though he did not receive a fine as mandated by statute. We find that when the sentence includes a penalty of a fine of "not more than" a certain amount without also including a minimum fine, the trial court's failure to impose a fine does not make the sentence illegally lenient. A fine of $0 is "not more than ten thousand dollars."

## CONCLUSION

The defendant's convictions and sentences are affirmed.


**AFFIRMED.**