# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1131


**STATE OF LOUISIANA**

**VERSUS**

**DEMONTE JAMAR HENRY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 32344-12
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.


**CONVICTIONS AND SENTENCES AFFIRMED.**


**John Foster DeRosier**
**District Attorney**
**Post Office Box 3206**
**Lake Charles, LA   70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward John Marquet**
**Louisiana Appellant Project**
**Post Office Box 53733**
**Lafayette, LA   70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Demonte Jamar Henry**

**Demonte Jamar Henry**
**A.L.C. Earth D-2**
**3751 Lauderdale Woodyard Road**
**Kinder, LA   70648**
**IN PROPER PERSON**

**AMY, Judge.**

The defendant was indicted for armed robbery and armed robbery with a firearm. After a trial, a jury found the defendant guilty of attempted armed robbery and attempted armed robbery with a firearm. The trial court sentenced the defendant to twenty years at hard labor without the benefit of probation, parole, or suspension of sentence for the attempted armed robbery conviction, and five years at hard labor without benefits for the attempted armed robbery with a firearm conviction. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The defendant, Demonte Jamar Henry, was charged with armed robbery, a violation of La.R.S. 14:64, and armed robbery with a firearm, a violation of La.R.S. 14:64.3. Those charges stem from an incident that occurred at a party where the defendant allegedly pointed a gun at the victim, an acquaintance, and told him to "give it up." In response, the victim threw his cell phone at the defendant and ran. The defendant suggested that the incident was a prank and that he did not intend to rob the victim. Further, the defendant denied that he had a gun.

After a trial, the jury found the defendant guilty of attempted armed robbery, a violation of La.R.S. 14:27 and 14:64, and attempted armed robbery with a firearm, a violation of La.R.S. 14:27 and 14:64.3. The trial court sentenced the defendant to twenty years at hard labor without the benefit of probation, parole, or suspension of sentence for the attempted armed robbery conviction and five years at hard labor without benefits for the attempted armed robbery with a firearm conviction. The defendant's sentences were to be served consecutively.

The defendant appeals, asserting that his sentence is excessive. The defendant has also filed a pro se brief, asserting therein that the evidence is insufficient to support his conviction and that the trial court failed to grant a severance as to his and his co-defendant's trials.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After performing such a review, we note no errors requiring correction by this court.

*Sufficiency of the Evidence*

The standard of review for sufficiency of the evidence claims in Louisiana is long-settled. In *State v. Hearold*, 603 So.2d 731, 734 (La.1992) (footnote omitted), the supreme court stated:

> When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.

Further, because it is the fact finder's role to weigh the respective credibility of the witnesses, the appellate court should not second guess the credibility determinations of the fact finder beyond the sufficiency evaluations required by the

*Jackson* standard of review. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Pursuant to La.R.S. 14:64(A), "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Louisiana Revised Statutes 14:64.3 states that:

> A. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
>
> B. When the dangerous weapon used in the commission of the crime of attempted armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:27 and 64.

Further, La.R.S. 14:27 states, in relevant part, that:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
>
> . . . .
>
> C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

Here, the victim, Joshua Melancon, testified that he went to a "kickback," which several witnesses described as a type of house party, with Kentral Turner. According to Mr. Melancon, he left the house to get his phone charger from his car when he saw Mr. Turner and the defendant walking towards him. Mr. Melancon testified that the defendant pointed a gun at Mr. Melancon's head. Mr. Melancon stated that the defendant told him, "[j]ust come out with everything. I want everything[,]" and that Mr. Turner told him to "just give it up." According to his testimony, when the defendant asked for Mr. Melancon's phone, Mr. Melancon tossed the phone towards the defendant and ran. The defendant chased Mr. Melancon around the house. Mr. Melancon testified that he heard "two clicks" when he was running around the house, which he perceived as someone trying to fire a gun at him. Further, Mr. Melancon testified that he was afraid for his life.

Thereafter, Mr. Melancon ran to the parking lot of a nearby Home Depot and called the police using an employee's phone. According to the testimony of both Mr. Melancon and the responding officer, Corporal Brenda Desormeaux, the police took Mr. Melancon back to the location of the party. However, there was no one outside when they arrived, and Mr. Melancon declined to give a statement at that time. Corporal Desormeaux testified that Mr. Melancon did not appear to be intoxicated or infirm when she saw him at Home Depot, but that there was a lot of fear in his body language. A recording of Mr. Melancon's 9-1-1 call was placed into evidence and played for the jury.

The testimony indicates that Mr. Melancon and his father arrived at the police station later that day and spoke with detectives about the incident. After that interview, the police issued arrest warrants for both the defendant and Kentral Turner. The defendant spoke with detectives, and a recording of his interview with

4

the police was put into evidence and played for the jury. Therein, the defendant admitted that he told Mr. Melancon to "[g]ive it up[,]" but denied that he robbed anyone or that he had a gun. The defendant also suggested that he was playing a joke on Mr. Melancon. The defendant stated in his interview that:

> Josh came out of the house. When I seen him come out, I walked out to him and I was staggering drunk, like I had my hand in my back pocket. And, I was like, "Don't move. Just give it up." He gave me his phone and he took off running. When he took off running I had his phone, and I was like, "Man, KT, man, give that man his phone. Why he took off running?" And they was all laughing like ha, ha, hee, hee, hee.

Kentral Turner also testified. The record indicates that Mr. Turner was initially charged as a co-defendant in this matter, but that he pled guilty to a reduced charge of criminal mischief before trial. Mr. Turner indicated on cross-examination that he has "new charges" and that his truthful testimony at trial might result in "cooperation" on those charges. Mr. Turner testified that he was friends with Mr. Melancon before this incident, but is not any more. Further, one of Mr. Turner's closest friends is friends with the defendant, so Mr. Turner has known the defendant for a long time. According to Mr. Turner, he and Mr. Melancon went to the party together. After they had been there for some time, he and Mr. Melancon walked out of the house together to talk. Mr. Turner testified that the defendant "stumbled" up to them and acted like he was reaching for something. According to Mr. Turner, the defendant told Mr. Melancon to "give it up." Mr. Turner denied that he saw a gun, and stated that he tried to reduce the conflict. However, he told Mr. Melancon to comply with the defendant's demand. Thereafter, Mr. Melancon threw his phone down and took off running. Mr. Turner took the phone from the defendant and tried to return it to Mr. Melancon. Although Mr. Turner asserted at

trial that he didn't remember if he thought the defendant actually had a gun, his testimony at a preliminary exam was that the defendant "most likely" had a gun.

The defendant chose to testify in his own defense. According to that testimony, he knows Mr. Melancon from playing basketball at a church, and there was a "minor incident" involving derogatory language at some point. The defendant testified that he had been drinking vodka and smoking marijuana on the night of the incident. According to the defendant, he saw Mr. Melancon at the party and stumbled up to him. The defendant stated that he told Mr. Melancon, "What's up? What's up?" in an aggressive manner, that he had his hands behind his back, and that Mr. Melancon threw his phone at the defendant and took off running. Further, he testified that he gave the phone to Mr. Turner to give back to Mr. Melancon.

The defendant denied pulling a gun on Mr. Melancon. The defendant also stated that he has "never had a gun in [his] life." In response to that testimony, the State introduced evidence consisting of printouts of a Facebook page depicting the defendant with "what appears to be two handguns in his pocket[.]" The defendant asserted that the "guns" were airsoft guns that shoot BB's and that they were professionally taken photos for an album cover and for a non-violence campaign. The defendant denied that he still had the airsoft guns.

Finally, Yosha Watson testified for the defense. She testified that she was outside at the time that the incident happened and that she saw Mr. Melancon throw his phone at the defendant and take off running. However, she also testified that she was not looking at the defendant, Mr. Turner, and Mr. Melancon during the entirety of the incident. Further, Ms. Watson testified that she had never seen the defendant with a gun.

Based on the testimony and the evidence submitted at trial, we find that, viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence such that the jury could reasonably conclude that the defendant attempted to take something of value that belonged to Mr. Melancon by the use of force or intimidation while armed with a firearm. *See* La.R.S. 14:27; 14:64; 14:64.3. Mr. Melancon testified that the defendant pointed a gun at him, demanded that he "give it up[,]" and that he threw his phone at the defendant in response to this demand. We note that the finder of fact may accept or reject, in whole or in part, the testimony of any witness and that the victim's testimony alone is sufficient to prove the elements of the offense. *State v. Craddock*, 10-1473 (La.App. 1 Cir. 3/25/11), 62 So.3d 791, *writ denied*, 11-862 (La. 10/21/11), 73 So.3d 380. In addition to the victim's testimony, several witnesses, including the defendant, corroborated that the defendant aggressively approached Mr. Melancon, that he stated something to the effect of "give it up," and that Mr. Melancon threw his phone at the defendant before running away. After reviewing the record, we conclude that this evidence is sufficient such that the jury could reasonably conclude that all of the essential elements of the offense had been proven beyond a reasonable doubt.

This assignment of error is without merit.

*Excessive Sentence Claims*

The defendant also asserts that his sentence is excessive. Our review of the record does not show that the defendant filed a motion to reconsider sentence. Pursuant to La.Code Crim.P. art. 881.1(E),

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the

state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

However, this court has reviewed excessive sentence claims where the defendant has failed to file a motion to reconsider sentence for bare excessiveness. *See*, *e.g.*, *State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, 131 S.Ct. 932, __ U.S. __ (2011).

As stated in *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, this court stated:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence

because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

The sentencing provisions of La.R.S. 14:64 provide that "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." Pursuant to La.R.S. 14:27(D)(3), the punishment for attempted armed robbery is a fine or imprisonment or both "in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Further, La.R.S. 14:64.3(B) provides that:

> When the dangerous weapon used in the commission of the crime of attempted armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:27 and 64.

Thus, the defendant's potential sentencing range was from zero to forty-nine and a half years, at hard labor, and without the benefit of probation, parole, or suspension of sentence for his conviction for attempted armed robbery, plus an additional mandatory sentence of five years at hard labor without benefit of probation, parole, or suspension of sentence for his conviction for attempted armed robbery with a firearm. *See State ex rel. Sullivan v. Maggio*, 432 So.2d 854 (La.1983). The defendant was sentenced to twenty years at hard labor without benefit of probation, parole, or suspension of sentence for his conviction for attempted armed robbery and the mandatory five-year enhancement for his conviction of attempted armed robbery with a firearm.

9

Our review of the record reveals that the information available to the trial court at the time of sentencing was that the defendant was then twenty years old and technically a first offender. However, the defendant had several other matters pending at the time of his sentencing. The record indicates that, after sentence was imposed, the State nolle prossed the defendant's other pending charges.

Although the defendant asserts that his sentence is excessive primarily because he is youthful and a first offender, we cannot say that the trial court abused its discretion in imposing a sentence of twenty years at hard labor without benefit of probation, parole, or suspension of sentence for his attempted armed robbery conviction. The jury was aware of the nature of the offense, and the finder of fact determined that the defendant used a firearm during the commission of the offense.[1] We note that the victim, Mr. Melancon, testified that he was in fear for his life during the commission of the offense. Additionally, sentences similar to the defendant's have been upheld on appellate review. *See State v. Robinson*, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, *writ denied*, 08-1086 (La. 12/19/08), 996 So.2d 1132; *State v. Hartwell*, 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, *writ denied*, 04-448 (La. 6/25/04), 876 So.2d 832. Further, the defendant's five-year sentence for attempted armed robbery with a firearm is mandatory.

Accordingly, we cannot say that the defendant's sentences shock our sense of justice or make no measurable contribution to acceptable penal goals. Thus, we find that the trial court did not abuse its broad discretion in sentencing the

---

[1] *See State ex rel. Sullivan*, 432 So.2d at 856-57 ("Armed robbery is a pernicious offense. The use of a dangerous weapon creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender. . . . . *Attempted* armed robbery is only slightly less reprehensible than the completed offense. Force or intimidation of a victim with a dangerous weapon is usually involved. Consequently, the genuine risks of emotional and physical harm created by an attempted armed robbery make it equally as dreadful as a completed offense.").

defendant to twenty years at hard labor without benefit of probation, parole, or suspension of sentence for attempted armed robbery and five years at hard labor, to run consecutively, without benefits for attempted armed robbery with a firearm.

This assignment of error is without merit.

*Severance*

The defendant asserts that the trial court erred in trying him separately when the bill of information charged him along with a co-defendant, Kentral Turner.

The record shows that the defendant and Kentral Turner were charged by bill of information with armed robbery and armed robbery with a firearm. However, the record shows that, before trial, Mr. Turner pled guilty to an amended charge of criminal mischief, a violation of La.R.S. 14:59, and his remaining charge was nolle prossed.[2]

The defendant contends that a severance was necessary because his defense and Mr. Turner's were mutually antagonistic, but that no severance was moved for. He also contends that Mr. Turner's guilty plea violated La.Code Crim.P. art. 704. That article provides that:

> Jointly indicted defendants shall be tried jointly unless:
>
> (1) The state elects to try them separately; or
>
> (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.

Our review of the record indicates that Mr. Turner pled guilty to reduced charges approximately eleven months before the defendant's trial in this matter.

---

[2] The record also reveals that the bill of information was amended during trial, without objection, to adjust the order of the defendant's charges.

After Mr. Turner pled guilty, any need for a severance became moot. Accordingly, we find no merit to the defendant's assignment of error in this regard.

## DECREE

For the foregoing reasons, the convictions and sentences of the defendant, Demonte Jamar Henry, for attempted armed robbery, a violation of La.R.S. 14:27 and 14:64, and attempted armed robbery with a firearm, a violation of La.R.S. 14:27 and 14:64.3, are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**