# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-695

STATE OF LOUISIANA

VERSUS

WILLIAM SHUPP

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 19130-13
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and David Kent Savoie, Judges.

**CONVICTIONS AND SENTENCES FOR ARMED ROBBERY AND FALSE IMPRISONMENT AFFIRMED; CONVICTION AND SENTENCE FOR UNAUTHORIZED USE OF A MOTOR VEHICLE REVERSED; REMANDED WITH INSTRUCTIONS.**

**John F. DeRosier**
**District Attorney**
**David Kimball**
**First Assistant District Attorney**
**Carla S. Sigler**
**Karen C. McLellan**
**Assistant District Attorneys**
**Fourteenth Judicial District Court**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Jonathan W. Brown**
**1025 Mill Street**
**Lake Charles, LA 70601**
**(337) 564-6990**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **William Shupp**

**EZELL, Judge.**

Defendant William Shupp was charged on August 1, 2013, via bill of information with armed robbery, a violation of La.R.S. 14:64, theft of a motor vehicle over $1500.00, a violation of La.R.S. 14:67.26, and false imprisonment with a dangerous weapon, a violation of La.R.S. 14:46.1. A preliminary hearing was held on September 6, 2013, following which the trial court found probable cause to charge Defendant. On June 9, 2014, Defendant filed a motion in limine, wherein Defendant requested that the State be precluded from introducing DNA evidence, surveillance videos, or testimony regarding same. A hearing was held on June 9, 2014, following which the trial court denied the motion.

Trial commenced on June 10, 2014. Defendant was found guilty by a jury on the charge of armed robbery and false imprisonment with a dangerous weapon. However, the jury reduced the charge of theft of a motor vehicle over $1500.00 to unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4.

On August 5, 2014, Defendant filed a motion for new trial. The matter was heard on the day of sentencing, August 6, 2014. Following argument, the trial court denied the motion. Defendant waived all time delays, and the trial court sentenced him to thirty years of imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence for the offense of armed robbery, one year of imprisonment at hard labor for the offense of unauthorized use of a motor vehicle, and five years of imprisonment at hard labor for the offense of false imprisonment with a dangerous weapon. All the sentences were ordered to be served consecutively for a total of thirty-six years imprisonment. Defendant filed a motion to reconsider sentence. A hearing was held on March 4, 2014, and following arguments, the trial court denied the motion.

Defendant has perfected a timely appeal, wherein he alleges four assignments of error: 1) The trial court erred when it denied Defendant's motion to preclude certain evidence from trial; 2) The evidence was insufficient to sustain the jury's verdicts; 3) The convictions for armed robbery and false imprisonment with a dangerous weapon in this case constituted double jeopardy; and 4) The sentences were constitutionally excessive.

## FACTS

On the morning of April 12, 2012, Defendant entered the store Tiger Nation in Lake Charles. He robbed the victim, Rebecca Stains, at gunpoint. He then tied her up and left her on the bathroom floor. Shortly thereafter, he returned and demanded the keys to her car and the pin number to her credit card.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent involving the jury's verdict as to count two and one error patent regarding the trial court's advisement of the time period for filing post-conviction relief. We will first address the error patent regarding the jury's verdict on count two.

**First Error Patent as to Jury's Verdict on Count Two**

For count two, the Defendant was charged with "theft of a motor vehicle valued over $1500.00." The jury returned a verdict, however, of "unauthorized use of a motor vehicle." This court finds the jury's verdict was non-responsive.[1] A list of responsive verdicts for "theft of a motor vehicle" is not provided for in La.Code

---

[1]The return of a non-responsive verdict by the jury is to be refused by the trial court in accordance with La.Code Crim.P. art. 813 and is discoverable as an error patent. *See State v. Thibodeaux*, 380 So.2d 59 (La.1980).

Crim.P. art. 814. Thus, the trial court should have used La.Code Crim.P. art. 815 to determine the appropriate responsive verdicts. The trial court and the parties apparently believed, however, that the responsive verdicts for "theft," which are provided for in La.Code Crim.P. art. 814, should be used as a guide.

The responsive verdicts for "theft" are provided for in La.Code Crim.P. art. 814(26). The trial court used La.Code Crim.P. art. 814(26) as a guide when it gave the following responsive verdicts to the jury in the present case:

1. Theft of a motor vehicle having a value over $1500.
2. Attempted theft of a motor vehicle having a value over $1500.
3. Theft of a motor vehicle having a value over $500 but less than $1500.
4. Attempted theft of a motor vehicle having a value over $500 but less than $1500.
5. Theft of a motor vehicle having a value of less than $500.
6. Attempted theft of a motor vehicle having a value of less than $500.
7. Unauthorized use of a motor vehicle.
8. Attempted unauthorized use of a motor vehicle.
9. Not guilty.

Although "theft" is obviously a similar offense to "theft of a motor vehicle," "theft of a motor vehicle" is not an offense specifically listed in La.Code Crim.P. art. 814. Thus, La.Code Crim.P. art. 815 controls the responsive verdicts that should have been given in the present case. It states:

In all cases not provided for in Article 814, the following verdicts are responsive:

(1) Guilty;

(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or

(3) Not Guilty.

The only way "unauthorized use of a motor vehicle" can be considered a responsive verdict of "theft of a motor vehicle over $1500.00" is if "unauthorized

3

use of a motor vehicle" is considered a lesser and included offense of "theft of a motor vehicle over $1500.00" under La.Code Crim.P. art. 815(2). Under La.Code Crim.P. art. 815(2), the general test for determining whether an offense is a lesser and included offense of the offense charged is as follows:

> [T]he test is whether the definition of the greater offense necessarily includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.

*State v. Simmons*, 422 So.2d 138, 142 (La.1982) (quoting *State v. Poe*, 214 La. 606, 38 So.2d 359, 363 (1948), (on reh'g)), *superseded by statute on other grounds as stated in State v. Mallett*, 552 So.2d 28 (La.App. 3 Cir. 1989), *writ denied*, 556 So.2d 1258, *and writ denied*, 558 So.2d 567 (1990) (italics deleted).

At the time of the commission of the present offense, "theft of a motor vehicle" (the offense for which the Defendant was charged) provided in pertinent part:

> A.  Theft of a motor vehicle is the intentional performance of any of the following acts:
>
> (1)  The taking of a motor vehicle, which belongs to another, either without the owner's consent or by means of fraudulent conduct, practices, or representations, with the intention to permanently deprive the owner of the motor vehicle; or
>
> (2)  The taking control of a motor vehicle that is lost or mis-delivered under circumstances which provide a means of inquiry as to the true owner, and the person in control of the motor vehicle does not make reasonable efforts to notify or locate the true owner; or
>
> (3)  The taking control of a motor vehicle when the person knows or should have known that the motor vehicle has been stolen.
>
>     . . . .
>
> C.  (1)  Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of one

4

thousand five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.

(2) Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of five hundred dollars or more but less than one thousand five hundred dollars shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.

(3) Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of less than five hundred dollars shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both.

La.R.S. 14:67.26.

"Unauthorized use of a motor vehicle," the crime for which the Defendant was found guilty, provides:

A. Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.

B. Whoever commits the crime of unauthorized use of a motor vehicle shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years or both.

La.R.S. 14:68.4.

Although this court has found no cases specifically addressing whether "unauthorized use of a motor vehicle" is a lesser included offense (and therefore responsive under La.Code Crim.P. art. 815) of "theft of a motor vehicle," this court has found a small discussion of the issue in the criminal jury instructions of the Louisiana Civil Law Treatise. The particular offense being addressed in this section is "theft of a motor vehicle." The author's comment states the following:

The responsive verdicts are governed by C.Cr.P. art. 815, which includes all lesser included offenses. Unauthorized use of the motor vehicle is arguably responsive since the taking without intent to

5

permanently deprive would constitute unauthorized use. However, the penalty for that offense is the same imprisonment and a greater amount of fine. It is therefore arguable that unauthorized use of a motor vehicle is not a lesser included offense. Unauthorized use of a motor vehicle is not value graded and unauthorized use of a movable is not value graded in the same manner and involves all movables, not merely vehicles. Thus, the authors do not recommend inclusion of either as a responsive offense.

17 Louisiana Civil Law Treatise, Criminal Jury Instructions § 10:119 (3d ed.) (citations omitted). The authors suggested the following responsive verdicts for "theft of a motor vehicle":

> Guilty
> Guilty of theft of a motor vehicle valued at . . . .
> Guilty of attempted theft of a vehicle [valued at . . . .
> Not Guilty

*Id.* (alteration in original).

Although the author's comment discussed above suggests that "unauthorized use of a motor vehicle" should not have been given as a responsive verdict in this case, we feel further discussion is warranted. First, we will examine whether under the *Simmons* rationale, the definition of all of the elements of the greater offense (theft of a motor vehicle) necessarily includes all of the elements of the lesser offense (unauthorized use of a motor vehicle). We note that when the trial court defined the greater offense (theft of a motor vehicle), it did not give the full definition of the offense as set forth in La.R.S. 14:67:26. Rather, the trial court instructed the jury as follows:

> Count two:
> The defendant is also charged with the theft of a motor vehicle having a value of $1500 or more. The State of Louisiana defines theft of a motor vehicle having a value of $1500 or more as the taking of a motor vehicle which belongs to another, without the owner's consent, with the intent to permanently deprive the owner of the motor vehicle.

6

This instruction corresponds with the first full paragraph of "theft of a motor vehicle" La.R.S. 14:67.26 (A)(1), minus the "fraudulent practices" language. Even though there are other ways in which "theft of a motor vehicle" can be committed under La.R.S. 14:67.26, the trial court apparently believed the only applicable elements were those for which it instructed the jury. According to the supreme court's opinion in *State v. Amos*, 02-1547 (La. 6/18/03), 849 So.2d 498, it was proper for the trial court to conform the definition of "theft of a motor vehicle" to the particular circumstances of the acts charged against Defendant. Thus, as did the supreme court in *Amos*, we will compare the elements of "theft of a motor vehicle," for which the jury was instructed in the present case, with the elements of "unauthorized use of a motor vehicle" in analyzing whether "unauthorized use of a motor vehicle" is a lesser and included offense of "theft of a motor vehicle."

Aside from the value of the motor vehicle, the jury in the present case was instructed as to the following elements for "theft of a motor vehicle":

1. Taking of a motor vehicle that belongs to another;

2. Without the owner's consent; and

3. With the intent of permanently depriving the owner of the motor vehicle.

The pertinent elements of "unauthorized use of a motor vehicle" are as follows:

1. Intentional taking or use of a motor vehicle that belongs to another;

2. Without the owner's consent; and

3. Without the intent of permanently depriving the owner of the motor vehicle.

La.R.S. 14:68.4.

7

The chief difference between the two offenses is the intent to permanently deprive the owner of the motor vehicle. Addressing this difference in the context of simple "theft" and "unauthorized use of a movable," the supreme court found that even if the evidence showed the defendant intended to permanently deprive the owner of the movable, the defendant could still be found guilty of unauthorized use of the movable:

> The defendant further contends that, if any criminal intent at all is proved, it is to deprive the owner of his property permanently, not temporarily. Thus, he argues, the crime of theft, La.R.S. 14:67 may have been proved, but not that of unauthorized use of movables, La.R.S. 14:68: The chief difference between theft and the latter lesser crime is the lack of an intention in the latter case to deprive the owner permanently of his property.

> However, La.R.S. 14:5 provides: "An offender who commits an offense which includes all the elements of other lesser offenses, may be prosecuted for and convicted of either the greater offense or one of the lesser and included offenses. * * * " . . .

> Unauthorized use is a lesser and included offense of theft, because theft includes all the elements of unauthorized use – plus the intent to deprive permanently (instead of only temporarily) the owner of his property. Unauthorized use is, in fact, a responsive verdict to theft.

> Accordingly, any evidence that the accused took the property of another with the intent to deprive him of it permanently (i.e., theft) is likewise sufficient to prove the lesser offense here charged (i.e., unauthorized use), even though in the latter case the requisite intent is only to deprive the owner temporarily of his property. We therefore find no merit to the defendant's contention.

*State v. Reeves*, 342 So.2d 605, 607-08 (La.1977) (citations omitted). Considering the supreme court's opinion in *Reeves*, we find the difference in the intent requirement did not prevent the crime of "unauthorized use of a motor vehicle" from being a lesser and included offense of "theft of a motor vehicle" in the present case.

A bit more problematic, however, is the fact (as noted by the author's comment discussed above) that the penalty for "unauthorized use of a motor vehicle" is not *less* than the penalty for "theft of a motor vehicle." The penalty for the highest grade of "theft of a motor vehicle" is imprisonment with or without hard labor for not more than ten years and/or a fine of not more than $3000.00. La.R.S. 14:67.26(C)(1). The penalty for "unauthorized use of a motor vehicle" is imprisonment with or without hard labor for not more than ten years and/or a fine of not more than $5000.00. La.R.S. 14:68.4. In a recent case, the supreme court questioned whether an offense could actually be considered a *lesser* offense when the penalty was not lesser by stating:

> Furthermore, it is not clear in what sense molestation can be considered a *lesser* offense when compared to aggravated incest, at least in the present case. When the victim is under the age of 13 years, both offenses are punishable by imprisonment at hard labor for not less than 25 years and not more than 99 years with at least 25 years of the sentence to be served without parole eligibility.

*State v. Graham*, 14-1801, p. 3 (La. 10/14/15), ___ So.3d ___, ___. Considering the exposure to a greater fine for a conviction of unauthorized use of a motor vehicle, we find that "unauthorized use of a motor vehicle" is actually a greater, not lesser, offense than "theft of a motor vehicle."

Another reason cited in the author's comment in support of finding "unauthorized use of a motor vehicle" is not responsive to "theft of a motor vehicle" is the fact that the penalty for "unauthorized use of a motor vehicle" is not value-graded while the penalty for "theft of a motor vehicle" is. We have not found any cases discussing this issue, but note that all of the value-graded offenses listed in La.Code Crim.P. art. 814 contain value-graded responsive verdicts.

This court finds, as the author's comment discussed above suggested, that because "unauthorized use of a motor vehicle" does not contain a *lesser* penalty than "theft of a motor vehicle" and because "unauthorized use of a motor vehicle" is not value-graded as is "theft of a motor vehicle," "unauthorized use of a motor vehicle" is not a lesser and included offense of "theft of a motor vehicle." Thus, "unauthorized use of a motor vehicle" can not be considered a responsive verdict of "theft of a motor vehicle" under La.Code Crim.P. art. 815. Consequently, the jury's verdict in this case is non-responsive to the offense charged.

The record contains no objection to the responsive verdicts given by the trial court in the present case. Nonetheless, the return of a non-responsive verdict constitutes an error patent on the face of the record and requires reversal of Defendant's conviction. *State v. Campbell*, 95-1409 (La. 3/22/96), 670 So.2d 1212. Accordingly, as "unauthorized use of a motor vehicle" is not responsive to "theft of a motor vehicle," Defendant's conviction as to "unauthorized use of a motor vehicle" should be reversed and the sentence for that offense set aside.

In light of our above finding that the jury's verdict was non-responsive in the present case, the next question is whether an acquittal should be entered as to the charged offense of "theft of a motor vehicle over $1500.00." Although the supreme court has rendered several opinions finding remand for a new trial is the appropriate remedy when the jury returns a non-responsive verdict,[2] the supreme

---

[2]In *Thibodeaux*, 380 So.2d 59, the supreme court, without any discussion as to whether an acquittal should be entered for the charged offense, determined that the jury's return of a non-responsive verdict required the setting aside of the conviction and sentence and remand of the case for a new trial. In *State v. Mayeux*, 498 So.2d 701 (La.1986), the supreme court again addressed a non-responsive verdict issue and again found that remand for a new trial was the proper remedy. This time, however, the supreme court discussed acquittal as a remedy but found no acquittal of the charged offense was necessary since the non-responsive verdict was a "non-crime." Later, in *Campbell*, 670 So.2d 1212, the supreme court found no acquittal of the charged

10

court recently came to a different conclusion when the jury returned a verdict for a non-responsive offense. *Graham*, ___ So.3d ___. Graham was charged with aggravated incest, but the jury returned a verdict of molestation of a juvenile. *Id.* After deciding that molestation of a juvenile was not a lesser and included offense of aggravated incest, and, thus, a non-responsive verdict under La.Code Crim.P. art. 815, the supreme court discussed the appropriate remedy as follows:

> The jury was given a full opportunity to return a verdict of "guilty of aggravated incest" but instead returned a verdict of "guilty of molestation of a juvenile," which the jury was instructed was a lesser degree of the offense charged. Louisiana Code of Criminal Procedure article 598(A) provides that "[w]hen a person is found guilty of a lesser degree of the offense charged, the verdict or judgment of the court is an acquittal of all greater offenses charged in the indictment and the defendant cannot thereafter be tried for those offenses on a new trial." *See also Price v. Georgia*, 398 U.S. 323, 328-30, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970) ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.") (footnote omitted). . . .
>
> . . .
>
> The proceedings were rendered fundamentally unfair when the state was permitted to add "guilty of molestation of a juvenile" as a responsive verdict after all evidence had been presented. Molestation of a juvenile is not a lesser and included grade of the offense of aggravated incest because the evidence sufficient to support

offense was necessary when the jury returned a non-responsive verdict that was actually, by definition, the same offense as the offense charged.

Since *Campbell*, this court has issued the following opinions regarding non-responsive jury verdicts. In *State v. Hurst*, 10-1204 (La.App. 3 Cir. 4/13/11), 62 So.3d 327, *writ denied*, 11-975 (La.10/21/11), 73 So.3d 383, this court found that an acquittal should be entered as to the charged offense when the judge returned a non-responsive verdict that was also a non-crime in Louisiana. This court distinguished both *Campbell* and *Mayeux* because the trial judge (the fact-finder) in *Hurst* specifically stated that he had a reasonable doubt as to whether Hurst committed the charged offense. Most recently, in *State v. Blade*, 12-721 (La.App. 3 Cir. 2/6/13) (unpublished opinion) (cited at 2013 WL 440573), this court relied upon the supreme court's original pronouncement in *Thibodeaux* and found the appropriate remedy for the jury's return of a non-responsive verdict was remand for further proceedings. The jury's verdict in *Blade* was for aggravated assault with a firearm, a designated offense in Louisiana.

11

conviction of aggravated incest may not necessarily support conviction for molestation of a juvenile. Furthermore, defendant objected to the addition of the responsive verdict and the evidence presented at trial is insufficient to support the jury's return of that verdict. Nonetheless, the jury's return of what it was instructed was a lesser responsive verdict is an implied acquittal of the charge of aggravated incest, which ended defendant's jeopardy and is a bar to a subsequent prosecution.

> For the reasons above, the matter is remanded to the trial court to enter a post-verdict judgment of acquittal.

*Id.* (alterations in original).

In reaching this conclusion, the supreme court distinguished two of its prior cases – *Mayeux* and *Campbell*. The supreme court distinguished *Mayeux* by stating the following:

> In *State v. Mayeux*, 498 So.2d 701 (La.1986), this Court nevertheless held that the jury's return of an illegal verdict for attempted aggravated battery, purportedly a lesser and included offense listed by the court as a responsive verdict but a non-crime under Louisiana law, "operate[d] neither as a conviction nor acquittal" for double jeopardy purposes. *Id.* at 705. Therefore, the Court in *Mayeux* concluded that "the appropriate action is to set aside the conviction and remand for retrial." *Id.*
>
> Defendant in *Mayeux*, however, subsequently obtained habeas relief from a federal district court. *Mayeux v. Belt*, 737 F.Supp. 957 (W.D. La. 1990). That court, relying on *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), found:
>
> > Even though the verdict of the jury at Mayeux's first trial could operate neither as a conviction nor acquittal of the non-crime of "attempted aggravated battery", there is no reason why it could not operate as an acquittal of the charge of aggravated battery, because the judge's instructions so directed. Even though the judge's instructions concerning a possible verdict of "attempted aggravated battery" were egregiously erroneous, that judicial error does not give the State a basis for retrying Mr. Mayeux.
>
> *Mayeux*, 737 F.Supp. at 961-62. Regardless of whether this Court's decision in *Mayeux* remains viable, defendant here was not found guilty of a non-crime. He was convicted of molestation of a juvenile, a crime established in Revised Statute 14:81.2.

*Id*. at ____. (alteration in original).

As in *Graham*, the present case is also distinguishable from *Mayeux* because the jury's verdict in the present case was not a non-crime. Unauthorized use of a motor vehicle, the jury's verdict in the present case, is a viable crime in Louisiana. La.R.S. 14:68.4.

The supreme court then distinguished *Campbell* by stating:

> In *State v. Campbell*, 95-1409 (La.3/22/96), 670 So.2d 1212, this Court found that a trial court's error in charging a jury they could find defendant guilty of jury tampering or attempted jury tampering "rendered the verdicts insolubly ambiguous" because "the offense of jury tampering encompasses the attempt to influence jurors for corrupt purposes." *Campbell*, 95-1409 at pp. 2-5, 670 So.2d at 1213-14. In the present case, however, there is no such ambiguity. Given the state's failure to prove familial affinity between the defendant and the alleged victim at the time of the incident–an essential element of aggravated incest–the jury implicitly acquitted defendant of that charge by returning a verdict of guilty of molestation of a juvenile. The jury's implicit acquittal is a bar to any subsequent prosecution for ***aggravated incest***. *See Price v. Georgia, supra; see also Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957) (verdict of acquittal is final, "ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.' ") (quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)).

*Id*. at ____.

The present case is likewise distinguishable from *Campbell*. In *Campbell*, the supreme court found the jury's return of a verdict for attempted jury tampering was ambiguous since attempted jury tampering is actually the same offense as the charged offense of jury tampering:

> Under Louisiana law, attempted jury tampering *is* jury tampering, the crime charged in the bill of information. . . .[W]e cannot say that the jury's return of the purportedly lesser verdicts of attempt *necessarily* and implicitly acquitted relators of any material element of the charged crimes, or that the verdicts *necessarily* represented an expression of jury lenity despite the weight of the evidence presented.

The verdicts rationally conformed to the conduct charged in the bill of information and the evidence presented at trial although they were otherwise illegal and should not have been charged by the trial court.

The verdict in a criminal case must clearly convey the intent of the jury. La.C.Cr.P. art. 810. The trial court's error in charging the responsive verdicts in this case rendered the jury's verdicts insolubly ambiguous, and we cannot discount the possibility that jurors meant to exercise lenity by returning the purportedly lesser verdicts of attempt. Because of the confusion caused by the error in listing the responsive verdicts in this case, the verdicts returned by the jury did not clearly convict or acquit relators of the charged offenses. In this context, we do not believe that retrial of relators under a correct set of instructions for the charged crime of jury tampering would constitute double jeopardy.

*Campbell*, 670 So.2d at 1214.

Unlike the jury's verdict in *Campbell*, the jury's verdict in the present case, "unauthorized use of a motor vehicle," is not the same as the offense charged, "theft of a motor vehicle over $1500.00." As previously discussed, "theft of a motor vehicle over $1500.00" requires the intent to permanently deprive while "unauthorized use of a motor vehicle" does not. Thus, we find the ambiguity that was present in *Campbell* was not present in the instant case.

Additionally, by finding Defendant guilty of "unauthorized use of a motor vehicle," the jury in the present case evidently found the State failed to prove Defendant intended to permanently deprive the victim of her vehicle since Defendant abandoned the vehicle at a carwash. Thus, as in *Graham*, we find the jury's verdict of "unauthorized use of a motor vehicle" was an implicit acquittal of the charged offense of "theft of a motor vehicle over $1500.00" and serves as a bar to any subsequent prosecution of Defendant for "theft of a motor vehicle over $1500.00." Accordingly, this court must enter an acquittal of the charged offense – theft of a motor vehicle valued at $1500.00.

**Second Error Patent as to La.Code Crim.P. art. 930.8 Advice**

14

Furthermore, the trial court failed to clearly advise Defendant as to the time limitations for filing post-conviction relief. According to La.Code Crim.P. art. 930.8, the prescriptive period for filing post-conviction relief is two years, and it begins to run when a defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. The court minutes indicate that the trial court "advise[d] the defendant of the prescriptive period for filing for post-conviction relief." The transcript indicates, however, that the trial court informed Defendant that he had "two years from today's date and the conviction becoming final to file for post-conviction relief." Thus, it is not clear whether the trial court advised Defendant that he had two years from the date of sentencing, two years from the date the conviction becomes final, or both, to file his application for post-conviction relief. Thus, this court hereby instructs the trial court to inform Defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

### ASSIGNMENT OF ERROR NUMBER TWO

We will address this assignment of error first since, should there be merit to Defendant's claim, he would be entitled to an acquittal and the remaining assignments of error would be moot. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981); *State v. Hearold*, 603 So.2d 731 (La.1992). The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

Defendant's second assignment of error asserts that the evidence submitted to the jury was insufficient to sustain the verdicts of armed robbery or false imprisonment with a dangerous weapon. His argument is based primarily on the fact that the victim was not able to identify him as the man who robbed her. He argues that except for DNA found on the mask the robber wore, there was nothing otherwise to connect him with the crimes. Defendant further points out that while his DNA was the major contributor, there was a minor DNA contributor also found in the mask.

Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S.14:64(A). "False imprisonment while armed with a dangerous weapon is the unlawful intentional confinement or detention of another while the offender is armed with a dangerous weapon." La.R.S. 14:46.1(A).

Rebecca Stains, owner of Tiger Nation, a store located in the Target parking lot area on West Prien Lake Road, opened her store on April 12, 2012, at 10:00 a.m. Within minutes after the store was opened, she saw a man walking rapidly towards the store. She stated at the time, she did not see a mask, but he was wearing a workout outfit, gray windpants and a blue windbreaker. She remembered the sound of the material. He marched into the store and pointed a gun at her. He told her to "[g]et down." She said she did not see his face; she was focused on the gun. He pushed her against the wall and then pulled her down. He pulled her to the cash register while demanding repeatedly to give him the money. She said he made the statement:, "'You better have more than this.' He said, 'I got to get my wife to DC' or 'my girl to DC.'" When she handed him the cash she had

16

below the counter, he told her not to look at him. She said he had on a mask "like a white mask a doctor wears[,]" and a hood pulled down over his face. *Id.*

Ms. Stains said that the robber then took her to the bathroom where he bound her hands behind her back with zip ties. The robber then left her on the bathroom floor. However, he returned a few minutes later and demanded her car keys and credit cards. She told him where her keys were and that her cards were in her purse which was under the seat of the car. He left again but returned a second time to demand her pin number. Ms. Stains stated she lay in the bathroom for a long time. Eventually she was able to get loose of the zip ties and called the police.

Ms. Stains' car was located shortly thereafter at Don's Car Wash on Nelson Road. The car wash's surveillance video showed the suspect leaving the car and heading south. A search of the area located a windbreaker jacket and windpants, zip ties, a baseball hat, and black Powerline BB pistol used in the robbery in a dumpster behind Que Pasa Restaurant on Nelson Road. The surveillance tape from the restaurant showed a man walking rapidly towards the dumpster and tossing a bundle into the dumpster. A mask like the types of mask doctors wear was located in the pocket of the windbreaker along with Ms. Stains' cellphone. Ms. Stains identified the windbreaker, windpants, gun, and mask as those used by the robber. She did not remember a baseball hat.

Rachelle Arceneaux, an independent contract courier, testified that on the morning of April 12, 2012, she was parked in the parking lot of MidSouth Bank, located across the street from Don's Car Wash on Nelson Road, at approximately 10:21 a.m., when a man approached her vehicle. The man, who looked sweaty and "messed-up" asked her for a ride. She said he was carrying a black jacket and she

17

thought he may have had a gun. She told him she was not allowed to give rides. He left and walked behind the car wash towards Taco Bell. When she went into the bank she told one of the tellers about the man in the parking lot. Later in the afternoon, she returned to the MidSouth Bank and was told that the man she saw may have committed a crime and that the police wanted to speak with her. She spoke with an officer. The next day she saw a picture of the man on KPLC news regarding the robbery. The picture was a still picture taken from the surveillance video from the Taco Bell located on Nelson Road. She called the detective and told him that was the man who asked her for a ride. Ms. Arceneaux viewed the surveillance video from Taco Bell and identified Defendant in court as the man who approached her on the morning of April 12, 2012.

Sergeant Richard Harrell, with the Lake Charles Police Department, testified he sent the clothing, the mask, and the gun to Southwest Louisiana Criminalistic Laboratory to test for DNA and fingerprints. There was no discernible fingerprint found on the BB pistol. However, in January 2013, the sergeant was informed that identifiable DNA was located on the mask. On February 22, 2013, the sergeant was informed that a match to the DNA had been found through CODIS (Combined DNA Index System), and that was Defendant's. Defendant was eventually located in Texas and extradited to Lake Charles.[3] In September 2013, a buccal swab was taken from Defendant and his DNA was matched with the DNA found on the mask.

It was also discovered that Defendant was in Lake Charles on the date of the robbery. Paula Arabie, the collection manager for L'Auberge Casino, testified that Defendant had been "comped" a room at the casino for April 9 through 12, 2012.

---

[3]Defendant was extradited to Lake Charles in March 2013.

She explained that Defendant, a frequent gambler, had a membership card and that his transactions were kept and recorded for the "comp" benefits. She testified that he last used his membership card at 4:39 a.m. on April 12, 2012, with winnings of a little over $700.00, and even though he had one night's comp left, he checked out of the hotel that same day.

As noted above, Defendant appends his argument to the fact that there was a second DNA—a minor contributor—located in the mask. He notes that there was no evidence connecting him to the victim's car, the BB pistol, the items located in the dumpster, and no eyewitness to his robbing the victim at gunpoint. He argues that there was not sufficient evidence to convict him beyond a reasonable doubt that he was the man who robbed Ms. Stains at gunpoint; therefore, he was also not guilty of false imprisonment with a dangerous weapon.

We note that except for the DNA evidence, there is no direct evidence connecting Defendant to the crime. However, the direct and circumstantial evidence supported the jury's verdict. "When analyzing circumstantial evidence, La.R.S. 15:438 provides that the finder of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence." *State v. McLean*, 525 So.2d 1251, 1255 (La.App. 1 Cir.), *writ denied*, 532 So.2d 130 (La.1988). In *State v. Williams*, 13-497, pp. 4-5 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, 1240, *writ denied,* 13-2774 (La. 5/16/14), 139 So.3d 1024, this court discussed direct and circumstantial evidence as follows:

> "Evidence may be either direct or circumstantial." *State v. Jacobs*, 07-887, p. 12 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 551, *writ denied*, 11-1753 (La.2/10/12), 80 So.3d 468, *cert. denied*, --- U.S. ----, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012). We note that, whether the conviction is based on direct evidence or solely on circumstantial evidence, the review is the same under the *Jackson v. Virginia* standard. *State v. Williams*, 33,881 (La.App. 2 Cir. 9/27/00), 768

So.2d 728 (citing *State v. Sutton*, 436 So.2d 471 (La.1983)), *writ denied*, 00-[30]99 (La.10/5/01), 798 So.2d 963. Circumstantial evidence is that where the main fact can be inferred, using reason and common experience, from proof of collateral facts and circumstances. *Id.* Where the conviction is based on circumstantial evidence, in order to convict, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438.

In *State v. Chism*, 436 So.2d 464, 469 (La.1983) (citations omitted), the supreme court discussed the use of circumstantial evidence, stating:

> Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. Like all other evidence, it may be strong or weak; it may be so unconvincing as to be quite worthless, or it may be irresistible and overwhelming. There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog passed by. The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion.

> Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

Monica Quaal, a forensic analyst with Southwest Louisiana Criminalistic Laboratory, who qualified as an expert in DNA analysis, testified at trial that she tested the mask for DNA evidence. After explaining the process, she stated she found two contributors to the DNA located in the mask, one major contributor and one minor contributor. She went on to explain that the minor DNA profile contained insufficient amount for a comparison. The State hypothesized that the minor DNA could have found its way into the jacket when someone else, for whatever reason, put their hand in the pocket where the mask was located, and Ms. Quaal agreed. She stated "[i]t could have been what they call tertiary transfer which means I touched this and then they're gonna [sic] put the mask to there (indicating), and then they're gonna [sic] get some of that DNA from setting it there." However, while explaining "reasonable degree of scientific certainty," she testified that unless Defendant had a twin brother, it was a one in four quadrillion chance that the DNA belonged to someone else. In brief, the State argues:

> The defendant argues that Ms. Quaal testified that "the minor contributor of DNA to the mask could have possibly been the wearer of the mask." (Defendant's brief, p. 6). This argument shifts this Honorable Court from the truth of the matter: another person *could* have worn the mask, but the defendant *definitely* wore the mask. And the fact is that his DNA is found on one of the articles described by the victim, in a dumpster near where the victim's stolen car was found. The defendant, a Texas resident, was in Lake Charles at the time of the robbery (according to the casino records), and was seen by Ms. Arceneaux down the street on the day of the robbery. There is no other reasonable explanation. All the evidence points to the defendant and the only logical conclusion; that the defendant, while wearing a particulate mask, robbed Mr. Stains, stole her car and left it at the car wash, dumping his clothes in a nearby dumpster.

Louisiana jurisprudence has consistently held that the premise of *Jackson v. Virginia* is rationality and that "*irrational* decisions to convict will be overturned, *rational* decisions to convict will be upheld, and the actual fact finder's discretion

21

will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). *See also State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied,* 09-1955 (La.6/25/10), 38 So.3d 352, and *State v. Thompson,* 13-194 (La.App. 3 Cir. 10/9/13), 123 So.3d 360, *writ denied*, 13-2671 (La. 7/31/14), 146 So.3d 544.

Considering the totality of the evidence and the circumstances in a light most favorable to the State, this court finds that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that Defendant robbed the victim at gunpoint and falsely imprisoned her with the use of a dangerous weapon.

There is no merit to this assignment of error.

### ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the State did not disclose exculpatory evidence until four days prior to trial. On the morning trial commenced, Defendant filed a motion in limine, wherein he asserted that the State failed to disclose a report from the Southwest Louisiana Criminalistics Laboratory which indicated that there was a second DNA contributor located on the mask the robber wore when he robbed Ms. Stains. He asserted at the motion in limine hearing that had the information been disclosed to him at the time the report was issued, January 28, 2013, there was a reasonable probability that the trial court would not have found probable cause to charge him with the crimes following the preliminary examination hearing and that he would not have voluntarily given a sample of his DNA but would have requested funds to have the mask retested for DNA. For these reasons, Defendant

22

asserts that the trial court should have suppressed the reports and that because the trial court failed to do so, he did not receive a fair trial.

In *State v. Taylor*, 12-25, pp. 18-20 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 535-36, the fifth circuit discussed alleged exculpatory evidence not disclosed as follows:

> In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant's due process rights where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecutors. See also *State v. Bright,* 02-2793, pp. 5-6 (La.5/25/04), 875 So.2d 37, 41-42. The duty to disclose is applicable even where there has been no request by the accused. *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The State's due process duty to disclose applies to both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *State v. Kemp* 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. *Brady* also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. *Giglio v. United States, supra.* See also *State ex rel. Guise v. State,* 00-2185, p. 2 (La.10/15/02), 828 So.2d 557, 558.
>
> Evidence is "material" under *Brady* only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. A reviewing court determining materiality must ascertain "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).
>
> While the United States Supreme Court has emphasized the prosecution's duty to disclose exculpatory evidence, it has not specifically spoken on the timing of such disclosures. But the Louisiana Supreme Court has held that late disclosure as well as non-disclosure of exculpatory evidence may deprive the defendant of a fair trial. *Kemp, supra; State v. Williams*, 448 So.2d 659, 665 (La.1984). *See also State v. Lande*, 06-24, pp. 23-24 (La.App. 5 Cir. 6/28/06),

934 So.2d 280, 296, *writ denied,* 06-1894 (La.4/20/07), 954 So.2d 154.

Moreover, discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. *State v. Garrick,* 03-0137, p. 5 (La. 4/14/04), 870 So.2d 990, 993 (per curiam); *State v. Strickland,* 398 So.2d 1062, 1067 (La.1981). Even a discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal under the Due Process Clause "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

In the current case, the chronology of events which was the basis of this claim is as follows:

On January 28, 2013, the following report was issued, which stated that on November 26, 2012, the laboratory received a sealed envelope that contained the subject mask. In pertinent part, the report stated:

A mixed DNA STR profile consisting of at least two contributors, most likely one major contributor and one minor contributor was obtained from the swabbing of the particulate mask. The major contributor DNA STR profile is from an unidentified male individual and is not the same as the DNA STR profile obtained from the reference buccal swabs of Rebecca Stains (item # 4). The unidentified DNA profile was entered into the Combined DNA Index System (CODIS) database and retained in the case file at the Southwest Louisiana Criminalistics Laboratory for future comparison. If a suspect is developed, a reference DNA sample will be required for comparison purposes. The minor DNA STR profile contains an insufficient amount of information for comparison purposes.

On February 22, 2013, the laboratory reported:

On 1/24/13, the major DNA profile obtained from the swabbing of the particulate mask (item # 5) matched to Louisiana DNA Database sample LSP08-017935. On 2/4/13, Louisiana DNA Database sample LSP08A-017935 was identified as being obtained from William A. Shupp, DOB 3/3/1971, SSN [redacted]. This information is provided as an investigative lead. A reference DNA sample from the above individual is required to be submitted to the laboratory for confirmation of this match.

24

On September 6, 2013, a preliminary examination hearing was held. During the hearing, after extensive testimony by Detective Harrell regarding what evidence was available, the trial court asked if there was only one DNA sample located in the mask.[4] The Detective answered in the affirmative. The trial court found probable cause to charge Defendant with the crimes.

On September 12, 2013, a sample of Defendant's DNA was taken and sent to the criminalistics laboratory. On December 18, 2013, the laboratory reported that '[t]he major contributor DNA STR profile obtained from the swabbing of the inside of the mask (item # 5) is the same as the DNA STR profile obtained from the reference buccal swab of William Shupp."

First, Defendant argued at the in limine hearing that he was not given the January 28, 2013 report until four days prior to trial. He was not aware of the fact that there was a second contributor; therefore, he did not have the time or resources to prepare a proper defense accordingly. The State noted that it had not received the report either. It was not until the prosecutor noticed that his file did not contain a report of the CODIS match did he contact the laboratory and requested a copy of the report. That was on June 5. He gave the report to the defense the following day.

We find that there was no *Brady* violation in this case. While the evidence was untimely, he did receive the information four days prior to trial. In *State v. Dozier*, 97-1564 (La.App. 3 Cir. 5/20/98), 713 So.2d 729, *writ denied*, 98-1694 (La. 11/25/98), 729 So.2d 573, this court held that a late disclosure is not a true *Brady* matter, rather the issue was the timeliness of the disclosure. Citing *State v.*

---

[4]In the trial transcript and in the discussion regarding sufficiency of the evidence, Detective Harrell is referred to as Sergeant Harrell.

*Huls*, 95-541 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, *writ denied*, 96-1734 (La. 1/6/97), 685 So.2d 126, this court noted:

> Disclosure of favorable evidence by the state must be made at such a time as to allow the defense to use the material effectively in the presentation of its case. *State v. Prudholm*, 446 So.2d 729, 738 (La.1984). Not all cases involving late disclosure of favorable evidence result in reversible error. We must determine if the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. *See State v. Smith*, 430 So.2d 31, 42 (La.1983). *See also United States v. Stephens*, 964 F.2d 424, 435-36 (5th Cir.1992).

*Dozier,* 713 So.2d at 733.

Furthermore, the evidence was not willfully or inadvertently withheld from Defendant, nor was the evidence exculpatory or of impeachment value. As pointed out by the State, "another person *could* have worn the mask, but the defendant *definitely* wore the mask." During discussions at the in limine hearing, the State offered to continue trial so that Defendant could have additional testing done on the mask to verify whether the minor contributor DNA could be matched and whether it was his DNA located on the mask. However, Defendant declined a continuance.

While Defendant further argues that had he known there was a second contributor, he would not have submitted to a buccal swab, he does not explain how voluntarily giving the buccal swab was prejudicial to his case. The buccal swab was requested by the criminalistics laboratory as a reference to insure there was no error. Furthermore, the State could have obtained a warrant for the buccal swab, and even then, a warrant would not have been necessary. In *State v. Franklin*, 11-1909, p. 2 (La. 12/16/11), 76 So.3d 423, 424, the supreme court held:

> The collection of DNA from persons arrested and charged with a crime but not convicted is now a matter of comprehensive federal and

state regulation, which authorize the taking of a DNA sample from arrestees and pre-trial detainees in the same routine manner as the taking of fingerprints and photographs[.]

Finally, Defendant argues that because Detective Harrell erroneously advised the trial court at the preliminary hearing that there was only one DNA contributor found in the mask, the trial court found probable cause to charge Defendant with the crimes. However, even if the detective had given the trial court the correct information, that there was one major and one minor contributor, the trial court would have still found probable cause. The State need only present a prima facie case at the preliminary hearing. *State v. Baham,* 13-901 (La. 6/28/13), 117 So.3d 505.

Louisiana Code of Criminal Procedure Article 296 provides in pertinent part:

> If the defendant has not been indicted by a grand jury for the offense charged, the court shall, at the preliminary examination, order his release from custody or bail if, from the evidence adduced, it appears that there is not probable cause to charge him with the offense or with a lesser included offense. If the defendant is ordered held upon a finding of probable cause, the court shall fix his bail if he is entitled to bail.

However, such a release does not have the effect of a dismissal of the pending charges. The State may then decide whether to take the defendant to trial or dismiss the charge. *State v. Sterling*, 376 So.2d 103 (La.1979). Moreover, a review of the in limine hearing transcript shows that all of evidence introduced to the trial court was the same as the evidence introduced to the jury in this matter, except that the jury also heard at length the fact that there were two DNA contributors, and the jury still found Defendant guilty beyond a reasonable doubt. It was unlikely that the trial court would not have found probable cause to hold Defendant to the charges in this case.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant asserts that the conviction for armed robbery and false imprisonment with the use of a dangerous weapon constituted double jeopardy. Defendant cites a case that, like the present one, involved armed robbery and false imprisonment to support his argument of double jeopardy. It provides:

> In the next assignment of error Williams, Green, and Maynor assert that they were subjected to double jeopardy when they were each convicted of both the offense of armed robbery and false imprisonment with a dangerous weapon based on the same course of conduct. We agree.

> A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const. Art. 1 § 15; La. C. Cr. P. art. 591; *State v. Knowles*, 392 So.2d 651 (La.1980). Louisiana uses both the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists. *State v. Ceasar*, 37,770 (La.App.2d Cir.10/09/03), 856 So.2d 236. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader "same evidence" test which dictates that:

>> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy and a defendant can be placed in jeopardy for only one.

> *State v. Steele*, 387 So.2d 1175 (La.1980); *State v. Robertson*, 511 So.2d 1237 (La.App. 2d Cir.1987), *writ denied*, 516 So.2d 366 (La.1988).

> If double jeopardy is found, the proper remedy is a vacation of the conviction and sentence for the lesser-punishable offense. *State v. Price*, 39,582 (La.App.2d Cir. 03/23/05), 899 So.2d 633.

> While Louisiana courts have examined the double jeopardy issue regarding other combinations of crimes with armed robbery, it seems the combination of armed robbery and false imprisonment with

28

a dangerous weapon has not been so examined for a double jeopardy violation. *See State v. Rabun*, 38,655 (La.App.2d Cir.08/18/04), 880 So.2d 184 (convictions for armed robbery and conspiracy to commit armed robbery violated double jeopardy); *State v. Robertson*, 386 So.2d 906 (La.1980) (convictions for first degree murder and armed robbery when armed robbery was the underlying offense violated double jeopardy); *State v. Joseph*, 2005-186 (La.App. 3d Cir.11/02/05), 916 So.2d 378 (convictions for armed robbery and aggravated burglary violated double jeopardy).

As already noted herein, the elements of armed robbery are (1) a taking, (2) of anything of value, (3) from the person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. False imprisonment while armed with a dangerous weapon is the unlawful intentional confinement or detention of another while the offender is armed with a dangerous weapon. Although no Louisiana court has considered these two crimes together, we conclude that under the *Blockburger* test, these are clearly two separate offenses. Armed robbery requires proof of a taking, which false imprisonment with a dangerous weapon does not. Conversely, false imprisonment requires proof of "confinement or detention" not required to prove armed robbery.

The same evidence test, however, is a broader test that assesses the evidence required to convict a defendant of each crime. In the case *sub judice* when the defendants are charged with both armed robbery and false imprisonment while armed with a dangerous weapon, the same evidence was indeed used to convict them of both crimes. In this case, using the principles of double jeopardy and applying them to the specific facts of this case we find that the evidence required to support the conviction of false imprisonment while armed with a dangerous weapon would also have supported the conviction for armed robbery. Thus, under the "same evidence" test, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. When the defendants entered Norris' home armed with a dangerous weapon and forced Johnson to remain at gunpoint while they ransacked the home after taking her weapon from her person, the defendants simultaneously committed the acts which could have supported a conviction for either offense. In presenting the facts to prove one offense, the state simultaneously proved the other. Therefore, since the same evidence will support a conviction for either offense, the defendants cannot be put in jeopardy for the two separate offenses.

Because false imprisonment with a dangerous weapon is a lesser offense as compared to armed robbery, the convictions of each defendant for false imprisonment with a dangerous weapon are hereby reversed.

*State v. Williams*, 45,755, pp. 6-9 (La.App. 2 Cir. 11/3/10), 54 So.3d 1129, 1135-36, *writ denied*, 10-2682 (La. 4/25/11), 62 So.3d 85, *and writ denied,* 10-2706 (La. 4/25/11), 62 So.3d 89.

As noted above, armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S.14:64(A). "False imprisonment while armed with a dangerous weapon is the unlawful intentional confinement or detention of another while the offender is armed with a dangerous weapon." La.R.S. 14:46.1(A).

Defendant argues that, as in *Williams*, the taking of things of value began before the restraining of the victim and continued throughout the occurrence of the victim's restraint. Accordingly, Defendant claims his right against double jeopardy was violated.

The State, however, argues that testimony established that after Defendant robbed the victim at gunpoint of all the money in the register and the petty cash box, he forced the victim into the bathroom where he zip tied her hands and left her on the bathroom floor to make his escape. Referring to a case wherein the defendant was convicted of armed robbery and false imprisonment with a dangerous weapon and this court did not find double jeopardy, the State argues:

> See the unpublished opinion of *State v. Sherman*, 11-1042 (La.App. 3 Cir. 04/04/12) [*writ denied*, 12-1433 (La. 1/11/13), 106 So.3d 547] ("Although the two offenses share the common element of the use of a weapon, they are so factually distinct that the same evidence did not support a conviction for both crimes. Evidence of restraint does not support an armed robbery conviction, and evidence of a taking does not support a false imprisonment conviction.")

In *Sherman*,[5] the armed robbers entered the business office of a motel and restrained the office worker with duct tape. The robbers then robbed the office. The robbers dragged the victim along with them when they moved to another room and broke into the safe.

In the current case, the State contends that it did prove both crimes independently. We agree. The two crimes can be temporally separated, as the victim was restrained *after* the taking (emphasis added). Additonally, Ms. Stains' restraint and confinement, which began at gunpoint, lasted until she was able to free herself, well after Defendant left the store. This renders this case factually distinguishable from *Williams*, 54 So.3d 1129, where the restraint of the victims lasted only the duration of the robbery. Although the two offenses, as in *Sherman*, shared the common element of the use of a weapon, they can be viewed as so factually distinct that the same evidence did not support a conviction for both crimes. Evidence of restraint does not support an armed robbery conviction, and evidence of a taking does not support a false imprisonment conviction. Pursuant to such reasoning, no double jeopardy violation occurred and the assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

Defendant's final assignment of error is that a thirty-six year sentence[6] is constitutionally excessive. In brief, appellate counsel argues only that Defendant did not commit the crimes. Uniform Rules—Courts of Appeals, Rule 2-12.4(B)(4) provides that "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review

---

[5] 2012 WL 1108650

[6] As we have entered an acquittal for the charge of unauthorized use of a motor vehicle, the Defendant's sentence currently stands as thirty-five years.

which has not been briefed." Accordingly, this court may choose to not review this assignment of error.

However, we will consider this assignment for the sake of thoroughness, as trial counsel did file a motion to reconsider pursuant to La.Code Crim.P. art. 881.1. In the motion to reconsider the sentence, trial counsel pointed out that Defendant had no criminal history, that Defendant had a young son who needed his emotional and financial support, and that there was no physical harm done to the victim. Trial counsel also noted that since all the crimes arose from the same incident, the sentences imposed should have been run concurrently.

As stated in *State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331 (alteration in original):

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in *State v. Smith,* 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, this court stated:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the

punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

The sentencing provisions of La.R.S. 14:64 provide that "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." Defendant received thirty years imprisonment without the benefit of parole, probation, or suspension of sentence. "Whoever commits the crime of false imprisonment while armed with a dangerous weapon shall be imprisoned, with or without hard labor, for not more than ten years." La.R.S. 14:46.1(B). For this offense, Defendant received five years at hard labor. All the sentences were ordered to be served consecutively for a total of thirty-five years imprisonment, a little more than a third of the sentence Defendant could have received for the offense of armed robbery.

At the sentencing hearing, Defendant's sister, Heather Cronkhite, addressed the trial court on his behalf. She related how Defendant had always been a caring and giving brother. She stated that Defendant graduated from Baylor University and became a teacher and a coach. She spoke of his young son and how her own children loved their uncle because he was such a generous soul. She read a letter from Defendant's mother, who was recovering from surgery and could not attend, detailing times when Defendant took lost boys into their home and helped to care

for them until other suitable arrangement could be made. She asked the court to be lenient.

Defendant addressed the trial court. After apologizing to the victim for the trauma she suffered, he explained:

> I've been advised not to go into the long story of what happened, but I feel that I have to say something. I met a man at the casino; [he] befriended me. I made a very stupid decision. The next day, I met him to sell him my prescription, and he pulled up in what is her car, after he had robbed her. I didn't know any of this. After he then robbed me, he fled the scene.
>
> I'm sitting in the car in the middle of nowhere, in a city I don't know. What am I going to do? So I got scared and grabbed all the stuff that - - we had fought in the car, and I threw it in the dumpster.
>
> His DNA was found on the - - on the stuff they found in the dumpster, and here I am. Sir, I'm a good person. I don't know what else to say.

The victim, Ms. Stains, and her husband addressed the trial court at length. They described the devastating effect the robbery had on Ms. Stains, their business, and their lives. Ms. Stains was diagnosed with severe post-traumatic stress syndrome and, at the time of trial, was still in counseling. They even stated they postponed starting a family because of her condition. After defense counsel and the State addressed the trial court, the trial court stated for the record:

> The Court, of course, sat through the trial of this matter. And quite honestly, Mr. Shupp, I'm very firmly convinced that you are the person that did this crime. I recognize that you've maintained, to this day, that this Court would be sending to jail an innocent man. I disagree.
>
> I recognize that God creates all his creatures with some good in them, and it appears from your family that you had, at one time, at least some good qualities. Evidently something happened in your life that caused you to twist off in such a stupid, stupid fashion.
>
> I can only try to imagine what Ms. Stains went through that day. And what has not been mentioned yet today was the fact that she continued to agonize over this situation until you were arrested right

34

at a year later. My God. What was she thinking for that one year, wondering when this was going to happen again or whoever did this to her was going to come back and finish what he started.

I am constrained to some extent by your lack of previous criminal record, but, Mr. Shupp, you must pay for the crime that you have committed here. Regardless of what I do here today, of course it doesn't undo what has happened. Doesn't - - I can't give the victims - - not only Ms. Stains, her husband, but her family - - back what they've lost. The money is immaterial.

Based on what this Court's heard, the mitigating factors being basically the only thing that you didn't ultimately physically hurt Ms. Stains and your lack of criminal record . . . .

As mentioned above, appellate counsel did not make any argument on appeal as to why the sentences were constitutionally excessive, including addressing any of the issue raised in trial counsel's motion to reconsider the sentence. However, the Louisiana Supreme Court has consistently held that a sentence of thirty to fifty years for the offense of armed robbery is an acceptable sentence for a first offender convicted of armed robbery.

In *State v. Spencer*, 14-3, pp. 17-18 (La.App. 4 Cir. 10/8/14), 151 So.3d 816, 826-27, wherein the defendant was convicted of armed robbery and received thirty years for the armed robbery and five years for the use of a firearm during the robbery, to be served consecutively, the fourth circuit discussed whether the sentence was excessive for a first time offender, and noted:

In *State v. Smith,* 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court stated that sentences of thirty-five to fifty years have been found to be acceptable for first offenders convicted of armed robbery. (citing *State v. Augustine*, 555 So.2d 1331, 1332 (La.1990), and *State v. Thomas*, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50). In *State v. Lewis,* 08-1308 (La.App. 3 Cir. 4/1/09), 16 So.3d 1, the court found that the defendant's thirty-year sentence was within the accepted sentence range for first felony offenders convicted of armed robbery. In *Lewis*, the defendant grabbed the victim, pulled a knife on him and made him take all the money out of the register. The defendant also took the victim's cell phone and then rode off on his bike.

35

In *State v. Hartwell,* 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, the defendant was found guilty of two counts of armed robbery. The defendant was sentenced to thirty-five years on each count of armed robbery with an additional five years on each count to be consecutively served to the armed robbery sentence for commission of the armed robbery with a firearm. On appeal, the defendant claimed that his sentences were constitutionally excessive because he was a first offender, and the victims were not hurt. *Id.,* 03-1214, p. 11, 866 So.2d at 906. The court noted that the trial judge considered the defendant's age of twenty-five years. *Id.* The court also relied upon the fact that the trial judge found that the defendant actions were horrible and that one of the victims testified that she was afraid she would die during the robbery. *Id.,* 03-1214, p. 11-12, 866 So.2d at 906-907.

A sentence of forty years for a first armed robbery offender was affirmed in *State v. Duncan*, 09-232 (La.App. 5 Cir. 11/10/09), 28 So.3d 410. In *Duncan*, the court noted that both victims, while not physically hurt, testified that they were afraid for their lives and continued to be affected by the incident. *Id.,* 09-232, p. 12, 28 So.3d at 417. One of the victims testified that he felt intimidated and feared for his life and that of his family. *Id.*

*See also State v. Henry*, 14-1131 (La.App. 3 Cir. 3/4/15), 159 So.3d 1176, and

*State v. Moten*, 14-1169 (La.App. 3 Cir. 3/4/15), 158 So.3d 972.

Defendant has failed to show that the trial court abused its vast discretion when it imposed the sentences. There is no merit to this assignment of error.

## DECREE

This court hereby affirms Defendant's convictions and sentences for armed robbery and false imprisonment with a dangerous weapon. We instruct the trial court to inform the Defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.

The Defendant's conviction and sentence for "unauthorized use of a motor vehicle," however, is hereby reversed and set aside since it is not a responsive

verdict to the charged offense of "theft of a motor vehicle over $1500.00." The

case is remanded to the trial court to enter a past-verdict judgment of acquittal as to

the charged offense of "theft of a motor vehicle valued over $1500.00."

**CONVICTIONS AND SENTENCES FOR ARMED ROBBERY AND FALSE IMPRISONMENT AFFIRMED; CONVICTION AND SENTENCE FOR UNAUTHORIZED USE OF A MOTOR VEHICLE REVERSED; REMANDED WITH INSTRUCTIONS.**